[844 NE2d 1135, 811 NYS2d 613]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NORCOTT CORBY, Also Known as CORBY NORCOTT, Appellant.

Argued November 16, 2005; decided December 22, 2005

## POINTS OF COUNSEL

*Alan S. Axelrod,* New York City, and *Laura R. Johnson* for appellant. The trial court denied appellant his due process rights to confront his accuser and to present a defense by precluding him from cross-examining the sole witness to implicate appellant regarding her motive to falsely accuse him and to deflect the blame for the crimes from herself, and the Appellate Division erred in ruling that any error was harmless. (*Davis v Alaska,* 415 US 308; *Chapman v California,* 386 US 18; *Delaware v Van Arsdall,* 475 US 673; *People v Crimmins,* 36 NY2d 230; *Smith v Illinois,* 390 US 129; *People v Hudy,* 73 NY2d 40; *People v Carroll,* 95 NY2d 375; *People v Rios,* 223 AD2d 390; *People v Ashner,* 190 AD2d 238; *Gordon v United States,* 344 US 414.)

*Robert M. Morgenthau, District Attorney,* New York City (*Theresa A. Foudy* and *Sylvia Wertheimer* of counsel), for respondent. I. The court properly precluded cross-examination of essentially cumulative probative value but great potential to unfairly prejudice the People's case and give rise to jury speculation. (*Delaware v Van Arsdall,* 475 US 673; *People v Williams,* 81 NY2d 303; *People v Hudy,* 73 NY2d 40; *People v Chin,* 67 NY2d 22; *People v Torres,* 289 AD2d 136; *People v George,* 197 AD2d 588; *People v Berg,* 59 NY2d 294; *Bruton v United States,* 391 US 123; *People v Arthur,* 290 AD2d 387; *People v Kinard,* 215 AD2d 591.) II. The Appellate Division correctly held that any error in precluding the desired cross-examination was harmless. (*Delaware v Van Arsdall,* 475 US 673; *Henry v Speckard,* 22 F3d 1209, 513 US 1029; *People v Allen,* 50 NY2d 898; *Chapman v California,* 386 US 18; *People v Sobers,* 272 AD2d 418; *People v Simmons,* 237 AD2d 313.)

## OPINION OF THE COURT

CIPARICK, J.

Following a jury trial, defendant was convicted of murder in

the second degree and robbery in the first degree. The trial court precluded defendant from cross-examining the People's primary witness concerning the specific circumstances which led her to inculpate defendant and two others in the subject crimes. Defendant urges that the preclusion of that line of inquiry was a denial of his constitutional right to confront his accuser and an abuse of the court's discretion. We hold that Supreme Court did not abuse its discretion by precluding such line of inquiry and no constitutional violation occurred.

In January 1996, defendant offered Xanderia Burnett $1,500 in exchange for use of her apartment for an illegal drug transaction. Defendant and Orlando Moreno (Moe) moved into Burnett's apartment while awaiting the arrival of a large amount of heroin to be brought from San Francisco by Yousef Mohammed. While residing in the apartment, Burnett observed defendant loading a small caliber handgun. When Mohammed arrived in New York, Burnett, defendant and Moe visited him at his hotel.

Several days later, Burnett, defendant, Moe and Walter Farrow went to Mohammed's hotel to bring him back to Burnett's apartment. Later that day, Mohammed remained at the apartment with Farrow and Moe while defendant went to visit his parole officer with Burnett. After visiting his parole officer, defendant and Burnett returned to the apartment, obtained Mohammed's hotel key, and proceeded to the hotel. While in Mohammed's suite, defendant searched the rooms and eventually discovered a stash of heroin.

Defendant and Burnett returned to the apartment with the heroin where Farrow and Moe were sitting in the living room watching television. Burnett testified that defendant, Moe and Farrow went into a back bedroom and emerged 15 minutes later at which time she went to the bathroom and saw Mohammed on a bed, face down, with blood pouring from his head. Defendant, Farrow and Moe divided the heroin among themselves, and then, with Burnett, wrapped the body in a rug, removed it from the apartment in Burnett's shopping cart and discarded it along Riverside Drive in Upper Manhattan.

The body was quickly found, identified, and eventually connected to Burnett, whose name and address Mohammed had given for bank accounts he opened before his death. Shortly thereafter, New York City Police Department Detective John Bourges questioned Burnett at her apartment while defendant was still in residence. Burnett denied any knowledge of a murder.

In April 1998, after being released from prison on an unrelated parole violation, defendant approached the Drug Enforcement Administration (DEA) to offer his services as a paid informant if it would locate Burnett for him. While being interviewed by the DEA, defendant cast suspicion upon Burnett in relation to Mohammed's murder. The DEA relayed that information to Bourges.

In July 1998, Bourges visited Burnett at her new home in Philadelphia. Bourges led Burnett to believe that he had spoken with defendant who implicated her in Mohammed's murder. Burnett then "broke down" and stated that it was defendant and two others who murdered Mohammed. Thereafter, Burnett identified defendant, Farrow and Moe in a photo array. She was taken to a local police precinct, and Mirandized. On October 26, 1998, defendant was arrested for Mohammed's murder.

During his trial in Supreme Court, defendant extensively cross-examined the People's witnesses. Defendant cross-examined Burnett, but was precluded from eliciting that she only implicated defendant and his two cohorts after she was told that defendant had implicated her in Mohammed's murder. Defendant argued that, in addition to showing hostility and bias, this line of inquiry was essential to his defense, because it was the only way to show why Burnett—after two years of denying any knowledge of the crime—inculpated him. The trial court precluded such line of inquiry, reasoning that such cross-examination would introduce evidence that would confuse the jury, cause speculation and place defendant's alleged statement before the jury without the People having had the opportunity to cross-examine him.

A divided Appellate Division affirmed the conviction. One Justice dissented and granted defendant permission to appeal. We now affirm.

It is well settled that "[a]n accused's right to cross-examine witnesses . . . is not absolute" (*People v Williams*, 81 NY2d 303, 313 [1993]). The trial court has discretion to determine the scope of the cross-examination of a witness (*see People v Coleman*, 56 NY2d 269, 273 [1982]; *see also Delaware v Van Arsdall*, 475 US 673, 679 [1986]). In exercising its discretion to limit the introduction of evidence, a trial court must weigh the probative value of such evidence against the possibility that it "would confuse the main issue and mislead the jury . . . or create substantial danger of undue prejudice to one of the parties"

(Prince, Richardson on Evidence § 4-103 [Farrell 11th ed]; *see People v Davis*, 43 NY2d 17, 27 [1977]; *see also Van Arsdall*, 475 US at 679).

While Supreme Court might have permitted the precluded inquiry, we cannot say the preclusion was an abuse of discretion as a matter of law. Indeed, Supreme Court gave the defendant wide latitude here in showing that Burnett had a motive to lie and delineated the boundaries of cross-examination that would elicit Burnett's bias and hostility toward defendant. Burnett testified that the murder was committed by men she invited into her apartment to engage in a drug transaction, that she assisted in discarding the body and that she cleaned the apartment of any evidence of the murder. Furthermore, Burnett testified that when she was first interviewed by Bourges at her apartment, defendant was in residence and had threatened to harm her child if she said anything about the murder. Burnett also testified that she did not contact the police with the information when defendant left the apartment because she feared for her family's safety and that she relocated to Philadelphia while defendant was incarcerated on an unrelated parole violation. Burnett also admitted to stealing from defendant when he was imprisoned. As such, Burnett's fear-based motive to lie and hostility toward defendant were evident to the jury.

The defense was also permitted to cross-examine Burnett about welfare fraud and her criminal conviction for possession of a weapon as well as her familiarity with the drug trade. Additionally, other evidence at trial, independent of Burnett's testimony, implicated defendant. Phone records and notes found in Mohammed's hotel suite connected defendant to Mohammed and Burnett's apartment immediately prior to the murder. Bourges testified that defendant was present and opened the door when he first visited Burnett's apartment shortly after the murder. If Burnett were to attempt to implicate someone in the murder, the most plausible candidate was defendant.

Contrary to the dissent's assertion, Burnett's motive to lie and hostility toward defendant and need to deflect blame away from herself were apparent to the jury from the accumulated testimony and evidence. Indeed, defense counsel argued vigorously in summation that Burnett had great reason to lie. Defendant argues that evidence of a witness's bias or "reason to fabricate is never collateral and may not be excluded on that ground" (*People v Hudy*, 73 NY2d 40, 56 [1988]). Nevertheless, we have previously stated that "[i]f bias or interest has been

fully explored through other means, or the precluded area involved cumulative matter already presented, there generally has been no infringement of the right of confrontation" (*People v Chin*, 67 NY2d 22, 29 [1986] [citations omitted]).

Any additional evidence of Burnett's bias or motive to lie, that would have been established by the precluded line of inquiry, would have been cumulative and of little probative value to defendant's case. On the other hand, the sought-after testimony would have caused jury speculation and confusion as to the truth of defendant's purported accusation. Burnett's interest in self-preservation was very apparent to the jury who found her credible.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting). Defendant was found guilty of the robbery and shooting death of a person in the apartment of the People's main witness. The People's theory of the case was that the defendant lured the victim to the apartment in order to rob him of drugs.

Because Supreme Court improperly limited defendant's cross-examination of the People's main witness, Burnett, by refusing to allow questioning of whether Detective Bourges told Burnett that defendant had implicated her in the murder of Yousef Mohammed, defendant was: (1) precluded from eliciting the most crucial evidence that went to Burnett's motive to lie regarding defendant's involvement in the crimes (e.g., when, and under what circumstances, did Burnett implicate defendant); and (2) deprived of his constitutional right to confront his accuser and present a defense. In short, Supreme Court, despite other evidence of motive, failed to properly exercise its discretion on defendant's right to cross-examine Burnett. Accordingly, I dissent and would reverse defendant's convictions and remand the matter for a new trial.

## A.

Despite the testimony elicited from police officers and forensic experts, as well as the evidence that linked defendant to Mohammed and Burnett's apartment (e.g., phone records and notes found in Mohammed's hotel room), the People's case against defendant was only as strong as the testimony of Burnett. Put differently, if the jury found that Burnett lacked credibility, defendant would not have been convicted. Burnett was the only

person to place defendant at the scene of the crimes and to link him to the crimes. She was, as the majority stated, "the People's primary witness." (Majority op at 233.) Because Burnett's testimony was so crucial to the People's case, defendant's cross-examination as to her motive to fabricate her testimony regarding who was responsible for the crimes was equally important to the defense. The relevant facts are stated below.

Detective Bourges initially interviewed Burnett shortly after the crimes were committed. Burnett testified that, out of fear of defendant, she did not provide any information regarding the murder during this interview. Even after she left New York and/or defendant was incarcerated, Burnett did not, at least for some time, provide any information regarding the murder to the New York City Police Department. In July 1998, more than two years after the commission of the crimes and after Burnett relocated to Philadelphia, Detective Bourges once again interviewed Burnett regarding Mohammed's murder. It is undisputed that Burnett implicated defendant during the July 1998 interview.

What defense counsel sought to elicit during Burnett's cross-examination was testimony that: (1) upon Detective Bourges' renewed request for information regarding the murder, Burnett once again denied having any information about the murder; (2) Detective Bourges then told Burnett that defendant implicated her in the murder; and (3) Burnett, only after Detective Bourges made this statement, implicated defendant. Defendant argued that bringing out this testimony would demonstrate to the jury that Burnett had a specific motive to lie to implicate defendant in the murder and thereby shift blame from herself to the man who accused her of the crime. Supreme Court precluded defendant from engaging in this line of inquiry, concluding that it would be self-serving hearsay evidence and invite the jury to speculate that Burnett was the murderer (which would cause confusion and prejudice the People's case). The Appellate Division affirmed the judgment of conviction and held that any error committed by Supreme Court was harmless. This Court now affirms the order of the Appellate Division and holds that "no constitutional violation occurred" (majority op at 233).

## B.

The Sixth Amendment to the Federal Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

This procedural guarantee applies to both federal and state criminal prosecutions (*see Pointer v Texas*, 380 US 400 [1965]). While the purpose of this right is to ensure that defendant has the opportunity to cross-examine his or her accuser, trial courts may, under certain circumstances, impose limits on defense counsel's inquiry into the potential bias of a witness for the prosecution. In *Delaware v Van Arsdall* (475 US 673, 679 [1986]), the United States Supreme Court stated:

> "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."

However, "the trial court's discretion in this area is circumscribed by the defendant's constitutional rights to present a defense and confront his accusers" (*People v Hudy*, 73 NY2d 40, 57 [1988], *abrogated on other grounds by Carmell v Texas*, 529 US 513 [2000]).

The *Van Arsdall* court further stated:

> "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness' " (*Van Arsdall*, 475 US at 680 [citation omitted], quoting *Davis v Alaska*, 415 US 308, 318 [1974]).

An alleged violation of the Confrontation Clause is subject to a harmless error analysis (*see Chapman v California*, 386 US 18 [1967]; *People v Eastman*, 85 NY2d 265 [1995]). Constitutional error is harmless only if it is harmless beyond a reasonable doubt (*id.*). In determining whether constitutional error is harmless, this Court has stated:

> "Two discrete considerations are relevant and have combined in varying proportions to produce specific results in particular cases. The first of such factors is the quantum and nature of proof of the defendant's guilt if the error in question were to be

wholly excised. The second is the causal effect which it is judged that the particular error may nonetheless have had on the actual verdict. It appears that it is the latter consideration which is critical in the application of the Supreme Court test as to harmlessness of constitutional error. Thus, however overwhelming may be the quantum and nature of other proof, the error is not harmless under the Federal test if 'there is a reasonable possibility that the . . . [error] might have contributed to the conviction' " (*People v Crimmins*, 36 NY2d 230, 240-241 [1975]).

## C.

Defense counsel was allowed to elicit testimony regarding: (1) Burnett's motive to lie as to her involvement in the crimes (i.e., in or around January 1996, Burnett knew about and facilitated the drug deal, the murder occurred in her apartment, she was there shortly after the murder occurred, she helped to dispose of the body and clean up, she did not report the crime, she denied having any information related to the crimes when initially questioned by Detective Bourges); and (2) Burnett's bias and hostility towards defendant (i.e., defendant allegedly made threats against Burnett and her family). However, this testimony, and the other evidence connecting defendant to Mohammed and Burnett's apartment, could not demonstrate to the jury that Burnett had a motive to specifically implicate defendant. Nor could this testimony and evidence establish that defendant was the most plausible candidate for Burnett to implicate. What was demonstrated was Burnett's motive to lie as to her participation as an accessory to the crimes (i.e., a motive for self-preservation). Without the cross-examination testimony defendant sought to elicit from Burnett regarding her motive for implicating defendant when she did, defendant could not demonstrate to the jury that Burnett had a reason to fabricate her testimony to falsely accuse defendant for the purpose of either: (1) shifting the blame from herself to defendant; or (2) retaliating against defendant for accusing her in the first place. Based on the foregoing, this motive to implicate defendant was not clearly apparent from the subjects that defen-

dant was allowed to delve into.* The jury should have been allowed to weigh the fact that defendant was implicated by Burnett only after Detective Bourges said that defendant implicated her in the crimes, along with any other evidence that went to motive.

Moreover, it is clear from the foregoing that: (1) Burnett's motive to implicate defendant was not fully explored; and (2) the precluded line of inquiry would not have been cumulative, of little probative value or confusing to the jury. Burnett had two distinct motives to fabricate here, i.e., the motive for self-preservation and the motive to implicate defendant two years after the crimes were committed. While the motive for self-preservation may have been apparent to the jury, the motive to implicate defendant when she did could not have been because defendant was prohibited from engaging in the line of inquiry related to that motive to fabricate.

The People, the Appellate Division majority and this Court's majority have expressed concerns that allowing defendant to elicit the testimony he sought from Burnett would have permitted the admission of hearsay statements or statements lacking in probative value. However, under these circumstances, the jury should have been given a curative instruction to address these concerns (e.g., the statements are not being offered for their truth but are being offered to demonstrate Burnett's motive to lie regarding when she implicated defendant) and given the opportunity to hear the evidence.

In summary, Supreme Court prohibited defendant from engaging in appropriate cross-examination designed to show Burnett's motive for implicating defendant as Mohammed's murderer when she did (i.e., after a two-year silence and only after Detective Bourges told Burnett that defendant implicated her). As a result, the jury did not hear all of the facts necessary for it to draw all reasonable inferences regarding Burnett's reliability and credibility. This error denied defendant his constitutional right to confront his accuser and present a defense. Moreover, in light of the fact that Burnett's testimony was the only evidence linking defendant to the crimes, there is a reasonable possibility that Supreme Court's error contributed to defen-

---

* The argument that Burnett's motive to lie was obvious to the jurors troubles me because it is not supported by anything except what the People, the Appellate Division majority, and this Court's majority think should be obvious to a jury.

dant's conviction. As such, the error is not harmless beyond a reasonable doubt.

For the foregoing reasons, I dissent.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur with Judge CIPARICK; Judge G.B. SMITH dissents and votes to reverse and order a new trial in a separate opinion.

Order affirmed.