11-1650-pr
Norcott Corby v. Dale Artus, et ano

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2011

(Argued: April 24, 2012     Decided: October 10, 2012)

Docket No. 11-1650

-----------------------------------------------------------x

NORCOTT CORBY,

Petitioner-Appellee,

-- v. --

DALE ARTUS and ERIC T. SCHNEIDERMAN,[1]

Respondents-Appellants.

-----------------------------------------------------------x

B e f o r e :   WINTER, WALKER and CABRANES, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Laura T. Swain, Judge) granting a writ of habeas corpus to petitioner-appellee.  The district court held that the New York Court of Appeals erred in concluding that the state trial court permissibly barred cross-examination of the main prosecution witness on the issue of whether she had accused petitioner-appellee of the crimes in question only after being told that petitioner-appellee had accused her.  On appeal, respondents-appellants, New York authorities, argue that petitioner-appellee's Confrontation Clause rights were not violated and that even if they were, any violation was harmless.  We agree that no Confrontation

---

[1] The Clerk of the Court is directed to amend the official caption as set forth above to reflect the substitution of the current New York Attorney General.  See Fed. R. App. P. 43(c)(2).

1

Clause violation occurred and therefore REVERSE the judgment of the district court.

KAREN SCHLOSSBERG, Assistant District Attorney (Alan Gadlin, Assistant District Attorney, on the brief), for Cyrus Vance, Jr., District Attorney, New York County, NY, for Respondents-Appellants.

ALAN S. AXELROD, Legal Aid Society, New York, NY, for Petitioner-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Respondents-appellants are the Superintendent of New York's Clinton Correctional Facility and the Attorney General of the State of New York (together, the "State"). The State appeals from a judgment of the United States District Court for the Southern District of New York (Laura T. Swain, Judge) granting a writ of habeas corpus to petitioner-appellee Norcott Corby, a New York state inmate by virtue of his New York state convictions for second-degree murder and first-degree robbery. The district court determined that the state trial court violated Corby's Confrontation Clause rights when it prohibited him from cross-examining the prosecution's principal witness about whether she had accused Corby of the crimes at issue only after being told that Corby had accused her. The district court held that the New York Court of Appeals misapplied U.S. Supreme Court precedent in upholding the trial court's ruling and that this error was not harmless.

2

On appeal, the State contends that Corby's Confrontation Clause rights were not violated at his trial and that even if they were, any violation was harmless.  We agree with the State that no Confrontation Clause violation occurred and therefore REVERSE the judgment of the district court.

**BACKGROUND**

The factual and procedural history of this case is set forth in the prior opinions of the district court and state courts.  See Corby v. Artus, 783 F. Supp. 2d 547, 550-53 (S.D.N.Y. 2011); People v. Corby, 6 N.Y.3d 231, 232-34 (2005); People v. Norcott, 15 A.D.3d 14, 15-18 (1st Dep't 2004).  For present purposes, it suffices to summarize the background for this appeal as follows:

**I.   Factual Background**

Corby was tried and convicted by a jury in New York Supreme Court for second-degree (felony) murder and first-degree robbery, see N.Y. Penal Law §§ 125.25(3), 160.15(2), in connection with the death of Yousef Mohammed.  Mohammed was a drug dealer from San Francisco who had traveled to New York City to sell heroin to Corby.  He was killed in the apartment of Xanderia Burnett, who was the prosecution's principal witness against Corby, and the only witness who testified directly about the events surrounding Mohammed's death.

Burnett testified as follows: She agreed to let Corby -- who previously had dated her mother and whom she had not seen in years -- use her Upper Manhattan apartment to conduct his drug deal with

3

Mohammed in exchange for $1500. On the night of the deal, she saw Corby and two of his associates go into a back room in her apartment, presumably where Mohammed was waiting. When they emerged, Burnett saw Mohammed lying on a bed, dead, with his hands tied behind his back and blood pouring out of his head. At Corby's instruction, Burnett helped Corby and his associates steal drugs from Mohammed's hotel room, remove Mohammed's body from her apartment and clean up the blood. After the murder, Corby continued to stay at Burnett's apartment for several months. He threatened to kill her and her family if she reported him.

Approximately a week after the murder, New York police officers discovered Mohammed's body in a gutter. They found Burnett's contact information in Mohammed's hotel room and Detective John Bourges, who was in charge of investigating Mohammed's death, visited Burnett's apartment. Burnett, who testified that Corby threatened to kill her son if she spoke to Bourges about the murder, claimed to know nothing about it.

In April 1996, Corby was sentenced to prison on an unrelated parole violation. Burnett testified that the following January, after she learned that Corby was being released, she moved with her family to Philadelphia because she still feared him. She admitted to having stolen money that Corby left behind in her apartment.

In April 1998, following his release from prison, Corby met with Agent Robert Hom of the DEA, seeking to become a paid informant. He also sought the DEA's help in tracking down Burnett,

4

who, he explained, had stolen from him. Hom refused the offer and suggested that Corby report the theft to local authorities, which Corby declined to do. About a week later, Corby returned and provided Hom with specific information about certain drug-related crimes. In particular, he told Hom that he had distributed heroin for Yousef Mohammed and that Burnett "might have been involved" in Mohammed's death. Corby claimed that he had been in Burnett's apartment with Burnett, Mohammed and another, that he left to visit his parole officer, and that Mohammed was dead when he returned. While Corby admitted to helping dispose of Mohammed's body, he claimed not to have been involved in the murder itself. Hom relayed this conversation to Detective Bourges.

In July 1998 -- more than two years after Mohammed's murder -- Bourges and another detective paid Burnett another visit, this time at her Philadelphia residence. Burnett claimed not to recognize a photograph of Mohammed. Bourges then told Burnett that he had spoken with Corby and that Corby had accused Burnett of murdering Mohammed. This statement was incorrect for two reasons: Corby had met with DEA Agent Hom, not Bourges, and Corby had only said that Burnett "might have been involved" in Mohammed's murder. But, after hearing about Corby's alleged accusation, Burnett began crying and accompanied the detectives to the local precinct, where she was given Miranda warnings. There, for the first time, Burnett

implicated Corby in Mohammed's death.  Corby was arrested several months later.[2]

While the foregoing account of Corby's April 1998 interview with Hom and of Bourges's subsequent visit to Burnett's Philadelphia residence was elicited at a pretrial hearing, not all of this information was made explicit to the jury at Corby's trial. Specifically, although the jury learned that Corby had spoken with the DEA about Mohammed's murder, and that Bourges later discussed that meeting with Burnett, the jury never was explicitly told that Corby claimed that Burnett "might have been involved" in Mohammed's murder or that Bourges later told Burnett (incorrectly) that Corby had accused her of the crime.

**II.  Corby's Trial and the Cross-Examination at Issue**

In November 1998, a New York grand jury indicted Corby for second-degree murder and first-degree robbery in connection with Mohammed's death.  In March 2000, Corby was tried by a jury in New York Supreme Court for these crimes, convicted on both counts and sentenced to concurrent prison terms of 25 years to life and 12 1/2 to 25 years, which he is currently serving.

At trial, Corby's lawyer cross-examined Burnett -- the sole testifying witness to the murder -- about her personal history, her account of Mohammed's murder and her accusation of Corby.  In particular, counsel focused on Burnett's delayed implication of

---

[2] Bourges did not arrest Corby's associates because he ultimately was unable to locate them.

Corby in Mohammed's murder. Corby's lawyer confronted Burnett with her original claim to law enforcement that she knew nothing of Mohammed's murder. He elicited that Burnett did not accuse Corby of this crime until after Bourges visited her in Philadelphia and told her (incorrectly) that Bourges -- rather than Agent Hom -- had met with Corby. And he established that, after Bourges told Burnett about that meeting, Bourges took Burnett to the local precinct and gave her <u>Miranda</u> warnings.

The trial court, however, sustained the prosecution's objection when Corby's attorney began to inquire into what Bourges had told Burnett about the substance of Corby's alleged meeting with Bourges. The trial judge and counsel for both sides then engaged in a lengthy colloquy over what Corby's lawyer hoped to elicit from Burnett and why. Corby's lawyer explained that he wanted the jury to learn that Bourges told Burnett that Corby had accused her of murdering Mohammed and that it was only then that Burnett accused Corby of the crime. The defense's theory was that Burnett and another had murdered Mohammed, and that when Burnett learned of Corby's accusation against her, she acquired a strong motive to lie and shift the blame falsely to Corby. Counsel explained that he wanted to craft the cross-examination question to identify Corby as the source of the accusation against Burnett because Burnett would have feared that the police would find such an accusation credible, as it would have come from an "individual who was there, and saw [Burnett] do it." Appendix ("A.") 104.

7

Later, however, Corby's attorney proposed a compromise in which he would leave Corby's name out and ask Burnett only whether Bourges had told her that someone -- without specifying who -- had accused her of the murder.

The trial court agreed with the prosecution that the sought cross-examination was improper.  It noted that, up to that point in the trial, it had given Corby's lawyer "every latitude" in cross-examining Burnett.  Id. at 110.  And, while Corby had the right to offer evidence that Burnett had killed Mohammed and that she therefore had a motive to falsely accuse Corby, the issue was how Corby could introduce such evidence.  The judge concluded that the line of questioning sought by Corby's attorney invited the jury to speculate about whether Corby in fact had accused Burnett.  The trial court was worried that, by cross-examining Burnett as to what Bourges said Corby had said, Corby's attorney was trying to introduce to the jury through cross-examination (1) Corby's defense that Burnett had killed Mohammed, and (2) Corby's statement implicating her in the crime.  The judge said he found this troublesome because Corby's implication of Burnett was unreliable (Corby had made it self-servingly while seeking the DEA's help in tracking down Burnett) and Bourges told Burnett something different from what Corby had told DEA Agent Hom.  The trial court was worried that introducing such an accusation this way was unduly prejudicial to the government because the prosecution could not

8

cross-examine Corby, who was protected by the Fifth Amendment and did not testify, as to the accusation's veracity.

The trial court ruled that, while Corby's lawyer could ask Burnett whether Bourges had told her that he had spoken with Corby about Mohammed's murder, counsel could not inquire into the substance of what Bourges claimed Corby had said. It further observed that if Corby wanted to introduce an accusation against Burnett, he could take the stand himself and be subject to cross-examination on the accusation. The trial court rejected Corby's lawyer's compromise suggestion that he be allowed to ask Burnett whether Bourges had said that some unidentified person had accused Burnett of the murder. In the judge's view, counsel still was trying to introduce an accusation that was made in unreliable and self-serving circumstances without permitting cross-examination of that accusation.

Following the trial court's ruling, Corby's lawyer continued his cross-examination of Burnett, which included the following exchange:

    Q. What actually happened was, after Bourges confronted
    you with information, he then asked you to come with him
    to a police station; right?

    A. I broke down in my kitchen.

    Q. Yes.

    A. Right after that.

    Q. You began to cry?

    A. Then I went to the precinct.

Q. Then you were asked to accompany the detective to the precinct; right?

A. Yes.

Q. In a police car? You went to the precinct; right?

A. Yes.

. . .

Q. [The police detectives] sat you down, right?

A. Yes.

Q. They told you they wanted to talk to you; is that right?

A. Yes.

Q. And then they read you your Miranda rights; right?

A. Yes.

Q. They told you that anything you said could be used against you; right?

A. Yes.

Q. And that's the first time you told any police officer that Norcott Corby was involved in this case; right?

A: Yes.

Id. at 137–39.

**III. Procedural Background**

Corby challenged his conviction, first through the New York state appellate courts and now through federal habeas review.

**A.   Direct Appeal**

Among Corby's points on direct appeal, he argued that the trial court had violated his Confrontation Clause rights under the

U.S. Constitution by precluding him from asking Burnett whether Detective Bourges told her that Corby had accused her of Mohammed's murder before she first implicated Corby.

In December 2004, the Appellate Division rejected Corby's argument. People v. Norcott, 15 A.D.3d 14 (1st Dep't 2004). The panel majority stated that "a strong argument" could be made that the trial court properly exercised its discretion in excluding the testimony, but that it was not necessary to decide the issue because any error was harmless, given that Burnett's "motive to lie was abundantly clear to the jury." Id. at 23. The dissent, however, would have overturned the conviction because, in its view, Corby's right of cross-examination was "eviscerated" because the trial court had prevented Corby from asking the "key question" of what prompted Burnett to "change her mind," i.e., to point the finger at Corby after more than a year of not doing so. Id. at 34 (Andrias, J., dissenting). It opined that this question was probative of Burnett's "motive to fabricate evidence against" Corby not only to "divert attention from her admitted participation," but also "in revenge for [Corby] allegedly implicating her." Id. at 32.

In December 2005, the New York Court of Appeals affirmed the decision of the Appellate Division. People v. Corby, 6 N.Y.3d 231 (2005). Unlike the state intermediate court, the Court of Appeals reached the question of whether the trial court had erred, and determined that it had not. The Court of Appeals held that the

11

ruling was a proper exercise of the trial judge's discretion and that Burnett's motive to lie and to implicate Corby was apparent notwithstanding the challenged evidentiary ruling.  It reasoned that "[a]ny additional evidence of Burnett's bias or motive to lie . . . would have been cumulative and of little probative value," whereas Corby's requested cross-examination "would have caused jury speculation and confusion as to the truth of [the] purported accusation."  Id. at 236.  In dissent, Judge George Bundy Smith concluded that the trial court's ruling was erroneous.  Like the dissenter in the Appellate Division, he determined that the trial court's ruling prevented Corby from eliciting that Burnett had a specific motive to retaliate against Corby for his alleged accusation by pointing the finger back at him.  Id. at 239-40 (G.B. Smith, J., dissenting).

**B.    This Habeas Petition**

Following the New York Court of Appeals's affirmance of his conviction, Corby filed a 28 U.S.C. § 2254 petition in the district court for a writ of habeas corpus.  The magistrate judge's report and recommendation to the district court concluded that the New York Court of Appeals's ruling was "in harmony with Supreme Court jurisprudence."  Corby v. Artus, No. 06 Civ. 15291 (LTS) (KNF), 2008 WL 8430550, at *10 (S.D.N.Y. Sept. 10, 2008).  The district court disagreed.  Like the dissenting opinions from the state appellate courts, the district court believed that "the exclusion of evidence regarding the alleged accusation eliminated a specific,

12

prototypical ground for bias from the jury's consideration":

retaliation bias. <u>Corby v. Artus</u>, 783 F. Supp. 2d 547, 556

(S.D.N.Y. 2011). The district court concluded that the state trial

court had exceeded its discretion by prohibiting "all inquiry into

[this] one prototypical form of bias." <u>Id.</u> at 557. It went on to

conclude that the error was not harmless, <u>id.</u> at 557-59, and

therefore granted the writ. The State appeals.

**DISCUSSION**

The sole claim before us is whether the New York Court of

Appeals erred in upholding the state trial court's limitation of

Corby's cross-examination of the prosecution's principal witness,

Burnett. Corby argues that the state trial court's ruling deprived

him of his Sixth Amendment right to confront witnesses against him

and that the Court of Appeals misapplied Sixth Amendment precedent

in concluding otherwise.

**I.   Right of Cross-Examination**

"The Confrontation Clause of the Sixth Amendment guarantees

the right of an accused in a criminal prosecution 'to be confronted

with the witnesses against him.'" <u>Delaware v. Van Arsdall</u>, 475

U.S. 673, 678 (1986) (quoting U.S. Const. amend VI). It affords a

defendant "a meaningful opportunity to cross-examine witnesses

against him in order to show bias or improper motive for their

testimony." <u>Brinson v. Walker</u>, 547 F.3d 387, 392 (2d Cir. 2008).

"[A] criminal defendant states a violation of the Confrontation

Clause by showing that he was prohibited from engaging in otherwise

13

appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Van Arsdall, 475 U.S. at 680.

The right of cross-examination, however, is not absolute. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis omitted). A trial judge retains "wide latitude" to restrict cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679; see also Watson v. Greene, 640 F.3d 501, 510 (2d Cir. 2011) (the "decision to restrict cross-examination will be reversed only when the court has abused its broad discretion" (internal quotation marks omitted)). "To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value." Watson, 640 F.3d at 510.

## II. Standard of Review

We review a district court's ruling on a petition for a writ of habeas corpus de novo. Overton v. Newton, 295 F.3d 270, 275 (2d Cir. 2002).

A federal habeas application by a state inmate may not be granted regarding a claim that was "adjudicated on the merits" in

14

state court unless that adjudication resulted in either "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1), (2). Corby contends that his petition falls in the former category because the New York Court of Appeals unreasonably applied the Supreme Court's Confrontation Clause jurisprudence in affirming the state trial court's limitation of his cross-examination of Burnett. See, e.g., Williams v. Taylor, 529 U.S. 362, 409-13 (2000); Cotto v. Herbert, 331 F.3d 217, 247-48 (2d Cir. 2003).

**III. Analysis**

We agree with the analysis of the New York Court of Appeals that the state trial court did not abuse its discretion in limiting Corby's cross-examination of Burnett. See Corby, 6 N.Y.3d at 235-36. Corby was able to show that Burnett had a motive to lie to deflect the investigators' attention from herself, given her deep involvement in the events surrounding Mohammed's murder: the murder occurred in her apartment and she helped steal drugs from the victim, remove the body from the apartment and clean up the blood. And the evidence of Burnett's hostility towards Corby -- her testimony that he had threatened her and her family, and her admission that she had stolen from him -- established that, to the extent she would falsely accuse anyone, Corby was "the most plausible candidate." Id. at 235. Thus, any additional evidence

15

of Burnett's motive to falsely shift blame to Corby would have been cumulative and of little additional probative value, but would have been unduly prejudicial to the prosecution for the reasons stated at sidebar by the state trial court.  The limitation of Corby's cross-examination of Burnett therefore was not an abuse of discretion.

Corby, however, argues that, even if the jury heard some evidence of Burnett's motive to lie and to implicate him, the state trial court's ruling had the effect of prohibiting all inquiry into "retaliation bias," i.e., Burnett's alleged motivation to retaliate against Corby for his alleged accusation against her by pointing the finger back at him.  For this argument, Corby relies on the Supreme Court's statement in Van Arsdall that:

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness.

475 U.S. at 680 (internal quotation marks and modification omitted).  The Appellate Division dissent, Norcott, 15 A.D.3d at 32, 35 (Andrias, J., dissenting), the New York Court of Appeals dissent, Corby, 6 N.Y.3d at 238-39 (G.B. Smith, J., dissenting), and the district court, Corby, 783 F. Supp. 2d at 554, all were persuaded by this retaliation-bias argument and relied on Van Arsdall in concluding that Corby's conviction should be overturned. For two reasons, we disagree with their conclusion.

16

**A.    Corby Failed to Argue Retaliation Bias at Trial**

At the sidebar regarding Corby's cross-examination of Burnett, Corby's lawyer did not argue that the sought cross-examination would be relevant to prove retaliation bias.  Instead, he contended that (1) he wanted to ask about the relayed accusation against Burnett to prove that she had a motive to shift blame away from herself, and (2) he wanted the jury to know that the accusation came from Corby because in that case, Burnett's motive to lie would be greater, as she would fear that the authorities would believe an accusation coming from someone who had witnessed the events in question.  Later, Corby's lawyer even proposed a compromise that would have foreclosed any retaliation argument: he would forgo specifying that Corby was the person who had accused Burnett if he could ask only whether some unidentified person had accused her.  Because the retaliation-bias argument was not presented to the trial judge, it could not have been an abuse of that judge's discretion not to rule in Corby's favor on this basis.  See Fuller v. Gorczyk, 273 F.3d 212, 222 (2d Cir. 2001).

In a subsequent motion, made to and denied by the state trial court after Burnett was dismissed as a witness, Corby "request[ed] that either Ms. Burnett be recalled for further cross-examination solely with regard to [her motive to lie], or that a mistrial be granted."  Supplemental Appendix 3.  One statement in that motion -- specifically, the second sentence of the following passage -- arguably implied the retaliation-bias theory of relevance:

17

> [W]ere the jury to hear that the defendant was accusing *her*, then the jurors would have a fact from which they could infer that she has a specific motive to cast blame on another. Were the Jury to hear that it was the *defendant* who was accusing her, then the jurors would have a fact from which they could infer that Ms. Burnett has a particular motive to lie against *this* defendant. Were the jury to hear that the defendant was accusing her, and that the Detective was *confronting* her with this material, then the jurors would have a fact from which they could infer that she has a motive to avoid being investigated herself.

*Id.* at 7-8. We conclude, however, that this single statement, read in the context of this passage and buried in counsel's motion, was not sufficient to alert the trial judge to a new theory of retaliation-bias relevance. The motion was backward-looking -- it argued that the trial court had "created error of Constitutional dimension," *id.* at 3, and that the "restriction [imposed] was fundamental error," *id.* at 4. To that end, it reiterated the arguments advanced at the sidebar, and nowhere suggested that it was advancing a new theory of relevance. The state trial judge was not required to read between the lines of counsel's motion to divine a previously unasserted legal theory, and it would undermine our system of federalism to disturb a state-court conviction on federal habeas review based on that judge's failure to do so.

**B.    The Desired Testimony Was Admitted by Implication**

Furthermore, and in any case, our precedent makes clear that the facts Corby sought to elicit from Burnett were effectively before the jury at his trial.

18

In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that a defendant's right to confront witnesses includes the right not to have the incriminating hearsay statements of non-testifying co-defendants admitted against him. In Mason v. Scully, 16 F.3d 38 (2d Cir. 1994), we held that the Bruton principle must be applied to exclude testimony when an arresting officer would testify that after a conversation with a co-defendant, he went looking for the defendant, because that testimony implies that the co-defendant had accused the defendant. Id. at 42-44; see also Ryan v. Miller, 303 F.3d 231, 250 (2d Cir. 2002) ("The relevant question is whether the way the prosecutor solicited the testimony . . . ma[d]e obvious to the jury the content of the conversation -- an accusation against [the defendant] -- and the source . . . even though it did not directly state this information.").

Here, without objection, Corby's lawyer elicited from Burnett the very information that would require exclusion under Mason and Ryan because it demonstrates the accusation; namely, that (1) Detective Bourges claimed to have met with Corby and discussed Mohammed's murder, (2) Bourges proceeded to track down Burnett in Philadelphia and tell her about his purported conversation with Corby, and (3) at that point, Burnett broke down in tears and was taken in a police car to the police station, where she was given Miranda warnings. As recognized by Mason and Ryan, the plain implication of this chronology was the substance of that which Corby argues he was unable to present to the jury: that Burnett

19

believed Corby had implicated her in Mohammed's murder when she first accused him. It therefore cannot be said that Corby was precluded from "expos[ing] to the jury the facts from which the jurors could appropriately draw inferences relating to the reliability of" Burnett, Van Arsdall, 475 U.S. at 680, specifically as to whether she accused him in retaliation for his accusation against her. Consequently, there was no violation of Corby's Confrontation Clause rights.

                         *   *   *

Because we hold that no constitutional violation occurred, we need not consider whether any error was harmless. We note, however, that the district court applied an incorrect harmless error standard (harmless beyond a reasonable doubt) in this case. Corby, 783 F. Supp. 2d at 557-58. While the test on direct appeal is whether a constitutional error was harmless beyond a reasonable doubt, see Chapman v. California, 386 U.S. 18, 24 (1967), in deciding federal habeas claims by state prisoners, because of the deference we afford to state courts, we "find an error harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 116 (2007) (citations and internal quotation marks omitted).

## CONCLUSION

We have considered all of Corby's arguments on appeal and find them to be without merit. The district court's order granting Corby's petition for a writ of habeas corpus is REVERSED.

20