People v Anonymous (2023 NY Slip Op 00962)

People v Anonymous

2023 NY Slip Op 00962

Decided on February 21, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 21, 2023

Before: Renwick, J.P., Webber, Singh, Rodriguez, Higgitt, JJ. 

Ind. No. 4414/11 Appeal No. 17209 Case No. 2019-3419 

[*1]The People of the State of New York, Respondent,
v
Anonymous, Defendant-Appellant.

Robert S. Dean, Center for Appellate Litigation, New York (John Vang of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Dana Poole of counsel), for respondent.

Judgment, Supreme Court, New York County (Bonnie G. Wittner, J. at jury trial and sentencing; Thomas Farber, J. at resentencing), rendered January 30, 2015, as amended March 10, 2021, convicting defendant of murder in the first degree (two counts), assault in the first degree (two counts), attempted assault in the first degree, robbery in the first degree, assault in the second degree and burglary in the first degree (three counts), and sentencing him to an aggregate term of 50 years to life, unanimously affirmed.
The court providently exercised its discretion in imposing reasonable limits on cross-examination of the People's expert psychologist (see People v Corby, 6 NY3d 231, 234-235 [2005]). To begin, counsel did not make a sufficient record to establish the relevance of a newspaper article that counsel tried to use as a basis for attacking the expert's credibility. Furthermore, the court appropriately precluded questions that would have confused or misled the jury (see People v Ferrigno, 188 AD3d 609 [1st Dept 2020], lv denied 36 NY3d 1056 [2021]; People v Johnson, 175 AD3d 1130, 1131 [1st Dept 2019], lv denied 34 NY3d 1017 [2019]). The court also providently precluded questions about the "rationality" of defendant's actions, which could have confused or misled the jury by suggesting that exhibiting irrational behavior would meet the standard required for the affirmative defense of lack of criminal responsibility by reason of mental disease or defect under Penal Law § 40.15 (the insanity defense) (see People v Grace, 60 AD3d 432, 433-434 [1st Dept 2009], lv denied 12 NY3d 854 [2009]). Other questions that likewise were potentially confusing or improperly phrased were properly precluded or rephrased by the court, and the court did not improperly curtail cross-examination of other prosecution witnesses. Accordingly, we find no violation of defendant's constitutional rights to cross-examine witnesses and present a defense (see Crane v Kentucky, 476 US 683, 689-690 [1986]; Delaware v Van Arsdall, 475 US 673, 378-679 [1986]).
Defendant has not preserved his claim that the court improperly prevented him from showing the entire videotape of the People's expert psychologist's interview of defendant, and we decline to review his claim in the interest of justice. As an alternative holding, we reject it on the merits. The 10-minute portion of the videotape provided a sufficient opportunity for the jurors to observe defendant's demeanor, for the purpose of assessing the credibility of the People's expert psychologist.
The court's rulings did not deprive defendant of evidence relevant to his insanity defense. The court providently redacted from 911 calls admitted at trial references to defendant as appearing "crazy" or "mentally ill" where those descriptions were not based on the callers' own observations, but reported what the callers had been told by others. A lay witness may opine on the rational or irrational nature of a person's conduct, but not [*2]on whether the person was of sound or unsound mind.
The court also providently redacted from medical records, and precluded medical testimony regarding, certain statements made by defendant's mother to hospital staff, because these statements lacked any "indicia of reliability" (People v Burns, 6 NY3d 793, 795 [2006]).
The court did not denigrate the defense, improperly intervene during examination of witnesses, or exhibit a bias for the prosecution. On the contrary, the court providently exercised its discretion in sustaining objections to argumentative or confusing questions "to keep the proceedings within the reasonable confines of the issues and to encourage clarity rather than obscurity in the development of proof" (People v Moulton, 43 NY2d 944, 945 [1978]). We note that the court likewise sustained defense objections and interrupted the prosecutor's questions, demonstrating the absence of bias against the defense. In any event, the accused is not deprived of a fair trial as long as the jury is "not prevented from arriving at an impartial judgment on the merits" (id. at 946).
The People did not violate then-applicable CPL 240.20(1)(g) by disclosing during their rebuttal case six recorded phone calls that defendant had made while he was at Rikers Island. Their disclosure was not belated, because that statute applied only to recordings "which the prosecutor intends to introduce at trial," meaning the People's "direct case" (former CPL 240.10[4]). Because the People did not seek to introduce the Rikers calls on their direct case, their disclosure was not belated. Upon determining that the calls were relevant to rebut evidence introduced by defendant, the People promptly disclosed them to the defense, and the court providently exercised its discretion in admitting them.
The trial court providently exercised its discretion in admitting a videotape of defendant interacting with an assistant district attorney as evidence of defendant's demeanor, affect and appearance shortly after the charged crimes. The videotape did not show defendant invoking his right to counsel or the cessation of questioning. The court's instruction ensured that the jury would consider the videotape only for a proper, limited purpose and that the jurors would not speculate as to what occurred after the video ended.
As to the treating doctor's testimony that defendant's competency examinations were conducted two months apart because the two-month gap was necessary to accommodate counsel's schedule, defendant has not preserved his claim that this testimony was used as evidence that he invoked his right to counsel, and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. The doctor's explanation for the delay between the tests did not violate defendant's rights.
Defendant has not preserved his challenges to the prosecutor's summation, and we decline to review them in the interest of justice. As an alternative holding[*3], we find nothing that was so egregious as to require reversal (see People v Overlee, 236 AD2d 133, 143 [1st Dept 1997], lv denied 91 NY2d 976 [1998]; People v D'Alessandro, 184 AD2d 114, 118-119 [1st Dept 1992], lv denied 81 NY2d 884 [1993]).
The prosecutor's belated disclosure of impeachment material about a relatively minor witness did not violate the People's Brady obligations, because the undisclosed evidence was not material and no prejudice arose from the belated disclosure (see People v Garrett, 23 NY3d 878, 891-892 [2014]).
The court correctly denied defendant's request for a charge on consciousness of guilt, where the People did not present consciousness of guilt evidence or argue that defendant showed a consciousness of guilt. Such a charge was particularly inappropriate here, where defendant did not dispute that he committed the acts underlying the charged crimes.
The court properly denied defendant's request to instruct the jury regarding the rebuttable "presumption of sanity." Instead, the court delivered the standard Criminal Jury Instruction on his defense, which, as we have observed, is "the better practice" (see People v Minor, 111 AD3d 198, 202 [1st Dept 2013]). Moreover, the presumption of sanity has been superseded by the statute making insanity an affirmative defense (People v Kohl, 72 NY2d 191, 195 [1988]).
Defendant's claim that the court should have instructed the jury regarding the effect of his statements during psychiatric examinations (CPL 60.55[2]) is unpreserved (see People v Smith, 209 AD2d 267, 268 [1st Dept 1994], lv denied 85 NY2d 866 [1995]), and we decline to review it in the interest of justice. As an alternative holding, we find no prejudice, because insanity was the only contested issue and the jury would have had no occasion to consider any such statements as proof of defendant's guilt.
We agree with defendant that the police officer's testimony about what defendant did not say while being questioned at the police precinct after his arrest was improper and should have been stricken (see People v Williams, 25 NY3d 185, 193 [2015]). While he did not preserve the current constitutional challenge, defendant did request that the court "strike all previous questions" on the improper subject, which the court erroneously refused to do. However, we find that the error does not require a new trial under the circumstances of this case (see People v Crimmins, 36 NY2d 230, 242 [1975]).
Because the original sentencing court improperly ran the sentences on the first-degree murder convictions consecutively, the resentencing court providently corrected that illegality by running the sentences concurrently, and denied defendant's request for plenary resentencing on the remaining counts. The original sentencing minutes supported the resentencing court's determination that the original sentencing Justice, who had since retired, had intended the sentences on burglary counts pertaining to the murder victims to run [*4]consecutively, for an aggregate sentence of 50 years to life imprisonment.
We perceive no basis for reducing the sentence.
We have considered and rejected defendant's remaining claims. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 21, 2023