(January 31, 2002)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH MILETO, Appellant. [737 NYS2d 170] —Mugglin, J. Appeal from a judgment of the County Court of Franklin County (Main, Jr., J.), rendered April 12, 1999, convicting defendant following a nonjury trial of the crimes of murder in the second degree (three counts), attempted murder in the second degree, burglary in the first degree, criminal possession of a weapon in the second degree, robbery in the first degree and grand larceny in the fourth degree.

Defendant was charged in 1998 with the crimes of murder in the second degree (three counts), attempted murder in the second degree, burglary in the first degree, criminal possession of a weapon in the second degree, robbery in the first degree and grand larceny in the fourth degree. The charges stem from a July 1994 incident in which defendant, at the request of his coconspirator, Ernest Scott, Jr. (who furnished the weapon), broke into the house of Robert Noel. While waiting for Noel's return, defendant burglarized the home and, upon Noel's arrival, shot him and Mary Ellen Winter, killing Noel and wounding Winter. Defendant left the scene by stealing Noel's car, which he abandoned on a street in the Town of Malone, Franklin County. He walked to a bar, but was refused service because it was then about 2:30 A.M. The bartender did, however, give him change for the public telephone, which he used to call a taxi to transport him to his home. After a nonjury trial, defendant was found guilty of all eight counts. County Court thereafter sentenced him to concurrent terms of imprisonment on all counts (the maximum of which was 25 years to life), except for the attempted murder and grand larceny counts which were ordered to be served consecutively to each other and consecutively to all of the concurrent counts, totaling 34⅔ years to life. Defendant appeals, asserting that numerous errors entitle him to a reversal of his conviction.

Defendant's first claim of error centers on County Court's pretrial failure to advise of the court's close personal friendship with Wayne Duso, the brother of Brian Duso, a disclosed

prosecution witness. Notably, defendant does not otherwise attack the procedure followed when he opted to waive a jury trial nor did he register an objection when the disclosure was made during the trial. By not objecting or asking the court to recuse itself or then demanding a jury, defendant has failed to preserve this issue for appellate review (*see*, CPL 470.05 [2]; *People v Magnano*, 158 AD2d 979, *affd* 77 NY2d 941, *cert denied* 502 US 864). Were we to reach this issue, we would hold that defendant's present assertion that he would not have waived a jury trial is unavailing. Assuming, arguendo, that defendant had a right to be advised of this fact and that he would have then opted for a jury trial or a nonjury trial before a different judge, a review of the record reveals that the trial he did receive was free from prejudice and was conducted impartially. Therefore, if County Court committed any error by not disclosing this friendship prior to the waiver of a jury, it was harmless beyond a reasonable doubt (*see, e.g.*, *People v Crimmins*, 36 NY2d 230, 237; *People v Moon*, 279 AD2d 804, 805, *lv denied* 96 NY2d 803). This is particularly so because County Court struck all of Duso's testimony because of a *Brady* violation and, therefore, did not rely on any of it in determining defendant's guilt.

Next, defendant asserts that he was denied the effective assistance of counsel because his attorney previously represented Joe Smith (a disclosed potential witness for the People) and Jason Duso, the son of Brian Duso. This argument has no merit. Smith was not called as a witness and, although defense counsel, as a Public Defender, had filed a notice of retainer in Jason Duso's case, he had never met with him prior to this trial and did not recognize him by name. Moreover, since this was obviously not a case where counsel simultaneously represented codefendants, defendant's reliance on *People v Gomberg* (38 NY2d 307) is misplaced.

Defendant next challenges the propriety of County Court's decision to grant a protective order for coconspirator Scott (after an ex parte hearing with the People), which delayed disclosing Scott's statement to defendant until 10 days before the trial. As a general rule, a defendant is entitled to be personally present at all material stages of his trial (*see, e.g.*, *Kentucky v Stincer*, 482 US 730; *People v Morales*, 80 NY2d 450). CPL 240.90 (3) specifically provides for ex parte motions and in camera testimony where a court is called upon to decide a motion for a protective order "[w]here the interests of justice so require." Pursuant to CPL 240.50 (1), upon motion of either party, a trial court may "issue a protective order denying, limit-

ing, conditioning, delaying or regulating discovery * * * for good cause," which includes "a substantial risk of physical harm, intimidation" or other reasons. Here, Scott testified concerning the basis of his knowledge of defendant's involvement in the crimes charged, threats against his life by defendant and the steps that he had taken for his personal safety due to his fear. This testimony was properly received on an ex parte basis "in the interests of justice" and constituted "good cause" for issuing an order of protection. We see no reason to disturb County Court's exercise of discretion in this regard, particularly in the absence of demonstrated prejudice to defendant (*see, People v Martinez*, 71 NY2d 937, 940; *People v Watson*, 281 AD2d 691, 695-696, *lv denied* 96 NY2d 925).

Defendant's next point involves Peter Recore, the taxi driver who, at trial, identified defendant as the person he drove home from Malone on the night of the crimes. Although the record is sparse, it appears that Recore testified on February 5, 1999; on February 16, 1999, in an ex parte conference, the prosecutor revealed to County Court that Recore was a patient in a State hospital for the mentally ill and had been transported to and from the trial by the State Police. The court determined that no judicial action was required. Defendant asserts that it was reversible error to exclude him from this hearing, and for the prosecutor, who he asserts knew of Recore's mental illness, not to disclose this to defense counsel before Recore testified. The record reveals, however, that the People had no specific knowledge of Recore's mental health history and only learned two weeks after he testified that he had been taken into protective custody. Moreover, nothing in the record supports the conclusion that Recore was mentally ill in July 1994 when he saw defendant, when he later identified defendant to the police or when he testified at trial. Moreover, assuming Recore's mental health might have been relevant to the case, "[p]sychiatric records 'are to be disclosed only when their confidentiality is significantly outweighed by the interests of justice' " (*People v Bird*, 284 AD2d 339, 339, *lv denied* 96 NY2d 916, quoting *People v Brooks*, 199 AD2d 275, 275, *lv denied* 82 NY2d 922). In light of this concern for the confidentiality of a third party's mental health records, the court did not err by conducting the hearing on an ex parte basis (*see, People v Bird, supra* at 339; *People v Graham*, 117 AD2d 832, 833-834, *lv denied* 68 NY2d 770).

Next, defendant argues that the record reflects that he received ineffective assistance of counsel because of the denial of counsel's request for an adjournment to review voluminous amounts of *Rosario* material. Contrary to defendant's asser-

tion, however, the record reflects that counsel submitted several motions, made a number of objections that County Court sustained and conducted extensive cross-examinations of the People's witnesses in which he was able to demonstrate, by using *Rosario* material, prior inconsistent statements with respect to at least two witnesses. Although counsel might have profited from having even more time to prepare, as would be true in nearly all cases, County Court did not abuse its discretion by denying the motion to adjourn and defendant ultimately received meaningful and effective assistance of counsel (*see, People v Rivera*, 71 NY2d 705, 708-709; *People v Baldi*, 54 NY2d 137, 147).

Lastly, defendant makes three arguments addressed to his sentence. He asserts that the sentence was harsh and excessive, that he was punished for asserting his right to go to trial, and that consecutive sentences were improper. First, considering the overwhelming proof of guilt, the brutal and premeditated nature of the crimes, the numerous opportunities that defendant had to withdraw before committing the crimes and his total lack of remorse, we find no validity to his claim of harshness (*see, People v Jeanty*, 268 AD2d 675, *lvs denied* 94 NY2d 945, 949; *People v Dolphy*, 257 AD2d 681, 685, *lv denied* 93 NY2d 872).

Next, we are unpersuaded by defendant's argument that he was punished for demanding a trial because Scott received a prison sentence of 5 to 15 years. Obviously, their situations cannot be equated. Scott's cooperation with the authorities allowed them to solve these crimes, which had been under investigation for at least four years, and Scott's involvement in the commission of the crimes was far less than that of defendant.

Finally, although the crimes of murder, attempted murder and grand larceny were committed within a brief period of time, they are all separate and distinct offenses for which consecutive sentences are available. They were not committed through a single act or through an act which, in itself, constituted one of the crimes and was a material element of another (*see,* Penal Law § 70.25 [2]; *People v Laureano*, 87 NY2d 640, 643; *People v Porter*, 256 AD2d 363, 363-364, *lv denied* 93 NY2d 976).

Cardona, P.J., Peters and Rose, JJ., concur. Ordered that the judgment is affirmed.