[945 NE2d 1006, 920 NYS2d 756]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OMAR MONTES, Appellant.

Argued January 12, 2011; decided February 17, 2011

## POINTS OF COUNSEL

*Legal Aid Society, Criminal Appeals Bureau*, New York City (*Allen Fallek* and *Steven Banks* of counsel), for appellant. Appellant was deprived of his right to confront his accuser where the court refused to strike her testimony despite her unavailability for cross-examination about facts disclosed after she left the stand that not only related to the events of the crime, but also implicated her in the crimes of which she accused appellant. (*People v Chin*, 67 NY2d 22; *Davis v Alaska*, 415 US 308; *Klein v Harris*, 667 F2d 274; *People v Vargas*, 88 NY2d 363; *Delaware v Van Arsdall*, 475 US 673; *United States v Cardillo*, 316 F2d 606; *People v Corby*, 6 NY3d 231; *People v Siegel*, 87 NY2d 536; *People v Cona*, 49 NY2d 26; *People v Goldstein*, 6 NY3d 119.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Matthew C. Williams* and *David M. Cohn* of counsel), for respondent. The trial court did not abuse its discretion by declining to strike Loraine Ceballo's entire testimony and instead ordering a more narrowly-tailored remedy. (*Delaware v Fensterer*, 474 US 15; *Delaware v Van Arsdall*, 475 US 673; *People v Burns*, 6 NY3d 793; *Brady v Maryland*, 373 US 83; *Giglio v United States*, 405 US 150; *People v Baxley*, 84 NY2d 208; *Imbler v Pachtman*, 424 US 409; *Leka v Portuondo*, 257 F3d 89; *Napue v Illinois*, 360 US 264; *People v Zimmerman*, 10 NY2d 430.)

## OPINION OF THE COURT

Jones, J.

We are called upon to determine whether the inability to recall an unavailable witness violated defendant's rights under the Confrontation Clause. We find it did not.

In June 2004, defendant and his friend, Carlos Gonzalez, were implicated in the shooting of Robinson Lopez. The victim died from multiple gunshot wounds. Defendant was charged with murder in the second degree and criminal possession of a weapon in the second and third degrees.

At trial the prosecution had relied upon the testimonies of Loraine Ceballo and Tamika Taylor, two witnesses to the shooting. Ceballo, the prosecution's key witness, had close relationships to the victim, Gonzalez and Taylor.

According to Ceballo's testimony, Gonzalez arrived at her apartment building with defendant. She testified that she watched the men approach the victim, saw them both raise their hands and then heard gunshots. She indicated that both men appeared to have objects in their hands, though she could not see what the objects were. After Ceballo heard the shots, she ran towards her building, and Gonzalez and defendant ran past her through the building's lobby.

After Ceballo's testimony, but before Taylor's, Ceballo and Taylor were brought to the District Attorney's Office for an interview. At the interview, Taylor initially denied being present during the shooting. She subsequently admitted to being present but only after being confronted with Ceballo's account. She also informed the interviewers that Gonzalez had given Ceballo a gun. At first, Ceballo denied receiving any gun, but she eventually admitted to the subsequent events which she had omitted from her prior interviews and testimony. These facts were later stipulated to by the parties.*

The next day, Taylor testified that she only saw Gonzalez with a gun, but she could not describe where defendant was positioned. She saw the two men run to the building door, wait for Ceballo to open the door and run into the lobby. Taylor

---

\* "The parties . . . stipulate that Loraine Ceballo was not honest when she testified in that she failed to state that Carlos Gonzalez . . . gave her the gun or guns when he ran past her after the shooting occurred. When first confronted at the District Attorney's office that Carlos Gonzalez placed weapons in her purse, Loraine Ceballo had denied that this had occurred. When confronted by Tamika Taylor about this matter, Loraine Ceballo immediately stated that Carlos Gonzalez shoved a weapon or weapons into her purse and that she took the purse containing the weapon or weapons up to her apartment. Loraine Ceballo is unavailable to be recalled by either side."

further stated that Gonzalez put "something" in Ceballo's purse. The two women went into the building's elevator, and Ceballo stated: "What am I going to do with the guns . . . I don't want this in my house." Taylor stated that she saw one gun, but was unsure if there was more than one.

After Taylor's testimony, it was revealed that Ceballo had a breakdown and twice attempted suicide. It was concluded that she would be unable to be recalled to testify again.

Since Ceballo couldn't be recalled, defendant moved for a mistrial or to strike her testimony. Defendant argued that Ceballo's material omissions and Taylor's subsequent testimony, which brought to light Ceballo's omissions, resulted in the denial of his right to confront his accuser. The court denied defendant's motion. Montes was convicted, after a jury trial, of criminal possession of a weapon in the third degree, but acquitted of murder in the second degree and criminal possession of a weapon in the second degree.

The Appellate Division affirmed, with one Justice dissenting (67 AD3d 586 [2009]). We too affirm. The trial court did not abuse its discretion in denying defendant's motion for a mistrial or to strike Ceballo's testimony because the inability to recall Ceballo did not violate defendant's rights under the Confrontation Clause.

Pursuant to both the Federal and State Constitutions, an accused has the right "to be confronted with the witnesses against him" at trial (US Const 6th Amend; NY Const, art I, § 6; *see Pointer v Texas*, 380 US 400 [1965]). The Confrontation Clause "has been held to include the right to cross-examine those witnesses" (*Pointer*, 380 US at 401). In *Delaware v Fensterer* (474 US 15 [1985]), the United States Supreme Court explained the two categories within which Confrontation Clause cases fall. Specifically, those "cases involv[e] the admission of out-of-court statements and . . . restrictions imposed by law or by the trial court on the scope of cross-examination" (*Delaware v Fensterer*, 474 US 15, 18 [1985]). We agree with the concurrence that the *Fensterer* categories do not encompass all possible Confrontation Clause violations. But no authority holds, and we see no reason to hold, that the right of confrontation includes a right to recall a witness and confront her about things she did or said after her cross-examination, conducted without any restriction of which defendant complains, was already completed.

Here, Ceballo's unavailability was neither imposed by law nor restricted by the trial court. Defendant exercised his right to

cross-examine Ceballo regarding her direct testimony. Ceballo became unavailable—due to mental illness—only after the conclusion of her testimony. Thus, these facts do not result in a violation of defendant's right to cross-examine the witness. Additionally, Taylor's testimony and the parties' stipulation revealed Ceballo's out-of-court statements concerning Gonzalez giving her a "gun or guns." Those statements, however, alerted defendant to the new information that afforded defendant the opportunity to attack Ceballo's credibility. Because those out-of-court statements tended to help defendant, he did not challenge them. For those reasons, there is no violation of defendant's right to confront his accuser.

Accordingly, the Appellate Division order should be affirmed.

Chief Judge LIPPMAN (concurring). Although I agree that there should be an affirmance, I do not agree with the majority that the affirmance should rest upon rejection of defendant's claim that his right of confrontation was infringed.

Within hours of her departure from the witness stand, the People's witness, Loraine Ceballo, who had in her testimony implicated defendant in the fatal shooting in connection with which he had been charged with murder and gun possession, disclosed to the prosecutor that her testimony had in a crucial respect not been truthful. She had testified that in the immediate aftermath of the shooting defendant and his codefendant, Gonzalez, ran from the courtyard where they had confronted the victim, through the lobby of the building where Ceballo was, and that, as they passed by her, she did not observe that they possessed guns. Later on the day of her testimony, however, she admitted to the prosecutor in an out-of-court interview that she not only saw a gun as defendants fled the scene but received at least one weapon from Gonzalez. Plainly, her statements to the prosecutor bearing directly on the subject matter of her direct testimony were required to be, and were, disclosed to defendant.[1] And, equally plainly, had Ceballo been available, defendant would have been entitled to recall her to explore the inconsistency between her in-court and out-of-court statements and the significance of her newly admitted involvement in the

---

1. Indeed, the People, citing *Brady v Maryland* (373 US 83, 87 [1963]), *Giglio v United States* (405 US 150, 154 [1972]), and *People v Baxley* (84 NY2d 208, 213 [1994]), concede that they were required to disclose these statements and that their duty to make such disclosure was coterminous with the trial (citing *Imbler v Pachtman,* 424 US 409, 427 n 25 [1976] and *Leka v Portuondo,* 257 F3d 89, 100 [2d Cir 2001]).

criminal sequence. Defendant's right of confrontation was clearly implicated. Its range was properly defined by Ms. Ceballo's direct testimony and, at a minimum, by the information required to be disclosed to defendant during trial, not by the circumstance that the witness, through no fault of the trial court, became unavailable. It does not matter why a witness becomes unavailable. If adverse testimony has been placed before the jury that a defendant has not been afforded a full and fair opportunity to test by means of cross-examination, the interests protected by the right of confrontation are fully entailed.

The dictum from the summary disposition per curiam in *Delaware v Fensterer* (474 US 15 [1985])—a decision addressing facts utterly dissimilar to those at bar[2]—cannot be properly read to define and thus limit the universe of Confrontation Clause claims to those "involving the admission of out-of-court statements and . . . restrictions imposed by law or by the trial court on the scope of cross-examination" (*id.* at 18). The Supreme Court has repeatedly counseled that this language was not intended to be exclusive—that "claims arising under the Confrontation Clause may not always fall neatly into one of these two categories" (*Kentucky v Stincer*, 482 US 730, 739 [1987]; *see also Coy v Iowa*, 487 US 1012, 1016 [1988]).

The present claim is undoubtedly atypically eventuated; witnesses do not ordinarily become unavailable so precipitously and in the wake of a nontestimonial disclosure crucial to full and fair cross-examination. But it does not follow from the fact that the claim does not "fall neatly into one of the[ ] two [*Fensterer*] categories" that it is not cognizable. We have in fact recognized that denial-of-confrontation claims may arise from a witness's midtrial unavailability for cross-examination upon a noncollateral matter (*see People v Vargas*, 88 NY2d 363, 380 [1996]; *People v Chin*, 67 NY2d 22 [1986]), and if there is some reason why unavailability by reason of the assertion of privilege should be treated differently from unavailability by reason of a medical problem, it is not explained by the majority. If testimony adverse to the defendant upon a noncollateral matter has been placed before the jury and the defendant has not been afforded an opportunity fully and fairly to test that testimony by

---

2. The claim disallowed in *Fensterer* was that an expert witness's inability to recall the basis for his testimony amounted to a denial of confrontation even though he was available to be cross-examined.

cross-examination, the right of confrontation has been infringed. Until today, there has never been a rule that the assertion of that right was somehow dependent upon the precipitant of a witness's unavailability.

Inasmuch as Ceballo was the only witness who claimed to have seen defendant engage in conduct likely incident to the actual use of a gun against the victim, the circumstance that her account of the relevant events was not in crucial respects fully explored and tested before the jury constituted a denial of the right of confrontation. Nor does it seem questionable that this denial raised a substantial danger of prejudice. It appeared at the time of defendant's motion to strike that Ceballo's testimony would, if credited, in combination with the forensic evidence strongly militate in favor of a verdict convicting defendant of murder. In this context, any evidence that Ceballo had not been truthful about her role in the events directly at issue was, from defendant's perspective, absolutely to be brought to the jury's attention through cross-examination; a stipulation was not a substitute for vigorous confrontation of the witness in open court (*see Mattox v United States*, 156 US 237, 242-243 [1895]; *Chin*, 67 NY2d at 30 n 3), and, in any event, at the time of defendant's motion to strike no stipulation had yet been entered into. The trial court's bare denial of the motion upon the ground that Ceballo's unavailability did not "in any way, shape or form discomfit[ ] the defense" was, on this record, error, even if the extreme relief sought by defendant would not, after careful consideration of the available remedial options, have been appropriate (*see Vargas*, 88 NY2d at 380).

I join in the affirmance only because it seems clear that, in acquitting defendant of the two top counts, the jury decisively rejected Ceballo's account and, accordingly, it does not appear that defendant ultimately was prejudiced by the jury's consideration of her incompletely vetted testimony.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur with Judge JONES; Chief Judge LIPPMAN concurs in result in a separate opinion.

Order affirmed.