[9 NYS3d 540]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JOHN WAKEFIELD, Defendant.

Supreme Court, Schenectady County, February 9, 2015

**APPEARANCES OF COUNSEL**

*John Wakefield*, pro se, and *Frederick Rench* and *Catherine Bonventre*, for defendant.

*Robert M. Carney, District Attorney* (*Peter H. Willis* of counsel), for plaintiff.

## OPINION OF THE COURT

MICHAEL V. COCCOMA, J.

The defendant John Wakefield is charged with murder in the first degree (Penal Law § 125.27 [1]), murder in the second degree (Penal Law § 125.25 [1] [a]), murder in the second degree (Penal Law § 125.25 [3]), robbery in the first degree (Penal Law § 160.15 [1]), and robbery in the first degree (Penal Law § 160.15 [3]).

The People seek to introduce at trial scientific evidence of deoxyribonucleic acid (DNA) using a probabilistic genotype analysis. The defendant does not argue that the principles and procedures applied to the evidence in this case to derive the DNA data prior to entry into the Cybergenetics TrueAllele Casework software are novel nor does the defendant argue that the use of statistical models and likelihood ratios in reporting the probative value of DNA evidence is novel. Instead, the defendant asks the court to suppress that evidence as being novel in that it abandons the human element in analysis and it analyzes data that falls below the thresholds incorporated in standard practice by DNA laboratories.

Peter H. Willis, Esq. appeared on behalf of the People; the defendant appeared in person and by Frederick Rench, Esq. and Catherine Bonventre, Esq. A hearing was held over numerous days at which the court had a full opportunity to consider the evidence presented in this proceeding, including the testimony offered and the exhibits received (*see* attached Table A). The court further had the opportunity to observe the demeanor of the witnesses—Dr. Mark W. Perlin, Dr. Barry W. Duceman and Jay Caponera—and has made determinations on issues of credibility with respect to these witnesses and the weight to give to their respective testimony. The court has also considered the arguments of counsel and the points of law referenced in their respective memorandums.

Since Cybergenetics TrueAllele Casework has never been accepted in a New York court, it is by nature novel scientific evidence. To be admissible in New York courts, it must pass the *Frye* test as first formulated in *Frye v United States* (293 F 1013 [1923]) and subsequently adopted by the New York Court of Appeals in *People v Middleton* (54 NY2d 42 [1981]). That protocol requires that expert testimony be based on a scientific principle or proceeding which has been "sufficiently established to have gained general acceptance in the particular field in

which it belongs" (*Frye* at 1014). A *Frye* inquiry is concerned with the basis of an expert's opinion and not whether the particular opinion is sound (*Lugo v New York City Health & Hosps. Corp.*, 89 AD3d 42 [2d Dept 2011]). In other words, *Frye* is not concerned with the reliability of an expert's conclusions, but instead with whether the expert's deductions are based on principles that have gained general acceptance as reliable (*see Nonnon v City of New York*, 32 AD3d 91 [1st Dept 2006]). And in deciding the admissibility of novel scientific evidence, a court may consider "opinions, texts, laboratory standards or scholarly articles" as well as expert testimony (*see People v Wesley*, 83 NY2d 417, 437 [1994]).

DNA identification is a powerful forensic tool for solving and preventing crime. Two common sources of data ambiguity in biological evidence are DNA mixtures from multiple contributors and low-template (evidence samples below the threshold) DNA. Although some American laboratories are moving to quantitative modeling of DNA mixture data, most still use combined probability of inclusion (CPI) or combined likelihood ratio (CLR), using the qualitative boolean logic of all-or-none allele (the number of repeated words) events. Both approaches apply thresholds to the DNA data that cut off quantitative information. Their analysts subjectively apply these analytical or stochastic thresholds manually to data peaks to decide whether or not they believe the evidence peak represents an allele in the genetic material. But the more complex data that has mixtures or low-template DNA limits the applicability of such qualitative procedures.

Computer interpretation methods use more of the quantitative short tandem repeat (STR) peak height data rather than thresholds and have been used for over 20 years. Computers offer three principal advantages in the interpretation process: (1) productivity—eliminates the often time-consuming human review of cases that are impossible to solve, (2) information—human review typically makes simplifying assumptions that can discard considerable identification information containing DNA evidence whereas a computer can use a statistical model to fully examine the quantitative peak height data, and (3) objectivity—human mixture interpretation methods sometimes use the suspect genotype (pair of allele) to help infer or report results whereas a mathematically programmed computer can infer a genotype directly from the evidence data without using any suspect information and then afterward compute a match likelihood ratio (LR) statistic from this genotype.

Probabilistic genotypes have been recognized by regulatory bodies such as the Scientific Working Group on DNA Analysis Methods[1] in its 2010 Interpretation Guidelines for Autosomal STR Typing by Forensic DNA Testing Laboratories and the American National Standards Institute in the 2011 article Data Format for the Interchange of Fingerprint, Facial & Other Biometric Information as a valid approach to DNA interpretation and reporting. There are two probabilistic approaches:

1. semi-continuous[2] —information is determined from the allele present—peak heights are not considered, and

2. fully continuous[3] —incorporation of biological parameters.

Cybergenetics TrueAllele Casework is a fully continuous probabilistic approach that analyzes the electropherograms (computerized DNA data that a local laboratory extracted and amplified) and considers the genotypes (pairs of alleles) at every locus (pair of DNA sentences) of each contributor, taking into consideration the mixture weights of the contributors, the DNA template mass, polymerase chain reaction (PCR) stutter, relative amplification, DNA degradation, and the uncertainties of all these variables. Its genetic calculator uses Markov chain Monte Carlo (MCMC)[4] to give the probabilities of all the different possibilities, not just a maximum possibility, and by using Bayes theorem,[5] it decomposes that calculation into a prior probability and a likelihood function that compares genotypes relative to a population and computes a match LR.

The defendant's expert, and others, question this approach. They argue that there is a lack of validation software, it is costly and time-consuming, and it uses "black box" technology. The acknowledged success of Cybergenetics TrueAllele Casework has begun to erode these barriers and there is a move in the direction of probabilistic modeling, but the use thereof

---

1. A forensic DNA advisory group to the FBI director that is comprised of forensic scientists who serve as DNA technical leaders or Combined DNA Index System administrators in their laboratories.

2. E.g. LRmix, LikeLTD, FST, Lab Retriever, Armed Expert, Geno Proof Mixture.

3. E.g. TrueAllele Casework, STRmix, DNA-View Mixture Solution, DNA-mixtures.

4. This was first published in the 1950s, and according to Dr. Perlin, "he would be hard pressed to know any field where MCMC has not been used" (Oct. 6, 2014 tr at 45).

5. An algebraic ($p[A/B] = p[B/A] \, p[A]/p[B]$) way to work out the likelihood of something in the face of some particular piece, or pieces, of evidence in use since 1812.

would still represent a minority of casework. However, the test is not whether a particular procedure is unanimously endorsed by the scientific community (*Cornell v 360 W. 51st St. Realty, LLC*, 22 NY3d 762 [2014]), but whether it is generally accepted as reliable (*People v Wernick*, 89 NY2d 111 [1996]).

### Peer Review

There have been numerous articles published relative to Cybergenetics TrueAllele Casework (*see* People's exhibit 15) in all the leading journals of the DNA community, including the American Journal of Human Genetics, the Journal of Forensic Sciences (the official scientific journal of the American Academy of Forensic Sciences), Forensic Science International: Genetics, PLOS ONE: Genomics, Croatian Medical Journal, and Science and Justice. Prior to being published, each of these articles had to be reviewed by two anonymous scientists in the DNA community to ensure a quality assurance that the manuscript and scientific results are up to the standards of the level of that journal, that the results are reported properly, that the results make sense, and that the conclusions that are drawn from the data are supported by the data. In addition thereto, there have been numerous forensic collaborations (*see* People's exhibit 16) with other scientists in the DNA community.

### Validation Studies

Dr. Perlin testified that Cybergenetics TrueAllele Casework's source code is a trade secret, which he will not reveal. The defendant argues that without that code, no outside scientist can replicate or validate Dr. Perlin's methodology and, therefore, Cybergenetics TrueAllele Casework evidence should not be admissible in this case. However, scientists can, and have, validated the reliability of Cybergenetics TrueAllele Casework even though the source code underlying the process is not available to the public. Cybergenetics TrueAllele Casework has undergone 20 unpublished validating studies and six published validation studies (People's exhibits 3, 4, 5, 6, 7, 27) to confirm that the laboratory is producing the same type of reliable results or determining the extent of reliability for the method or technology that's already been developmentally validated. Four of these were independent validation studies—Massachusetts, Virginia, and two by the New York State Police as addendums to People's exhibit 5 (People's exhibits 30, 31). Without exception, each of these validation studies found Cy-

bergenetics TrueAllele Casework to be sensitive (the extent to which interpretation identifies the correct person) and specific (the extent to which the interpretation does not misidentify the wrong person). And Cybergenetics TrueAllele Casework was shown to have provided objectivity, achieved greater genotype accuracy, and proved reproducible (the extent to which the interpretation gives the same answer to the same question).

## Scientific Community

On May 20, 2011 the New York State Commission on Forensic Science DNA Subcommittee unanimously approved Cybergenetics TrueAllele Casework for use by the New York State Police for their forensic casework. Pursuant to Executive Law § 995-b (13), this subcommittee was comprised of a chair appointed by the Chair of the Commission who then appointed six other members to the subcommittee, one of whom represented the discipline of molecular biology and was appointed upon the recommendation of the Commissioner of the Department of Health, one of whom represented the discipline of population genetics and was appointed upon the recommendation of the Commissioner of the Department of Health, one of whom was representative of the discipline of laboratory standards and quality assurance regulation and monitoring and was appointed upon the recommendation of the Commissioner of the Department of Health, one of whom was a forensic scientist and appointed upon the recommendation of the Commissioner of the Department of Health, one of whom was representative of the discipline of population genetics and appointed upon the recommendation of the Commissioner of Criminal Justice Services and one of whom was representative of the discipline of forensic science and appointed upon the recommendation of the Commissioner of Criminal Justice Services— all respected scientists who do research on different areas of DNA analysis. The subcommittee in this case consisted of Jack Ballantyne, Ph.D., Chairman, George Carmody, M.D., Eric Buell, Ph.D., Charles Hirsch, Ph.D., Mark Batzen, Ph.D., Anne Welsh, Ph.D., and Ranajit Chakraborty, Ph.D. (defendant's expert). It was their duty to assess and evaluate all DNA methodologies proposed to be used for forensic analysis. In that regard, it reviewed and evaluated Cybergenetics TrueAllele Casework over 1½ years and heard presentations by Dr. Perlin, Joe Galdi (who runs the DNA laboratory in Suffolk County), J. D. Bellvose, Russ Gedick (the DNA technical leader at the

Albany laboratory), and Dr. Barry W. Duceman (Director of the Biological Science Section of the New York State Police Forensic Investigation Center) before recommending its use by the New York State Police.

Thereafter, on July 15, 2011 the full Commission on Forensic Science unanimously approved Cybergenetics TrueAllele Casework technology for forensic casework *without any mention of the type of forensic casework and without limitation* (People's exhibit 12). This full Commission was composed of the Chair of the New York State Crime Laboratory Advisory Committee, the director of a forensic laboratory located in New York State, the director of the Office of Forensic Services within the Division of Criminal Justice Services, two scientists having experience in the areas of laboratory standards or quality assurance regulation and monitoring, a representative of a law enforcement agency, a representative of prosecution services, a representative of the public criminal defense bar, a representative of the private criminal defense bar, two members-at-large, and an attorney or judge with a background in privacy issues and biomedical ethics. The committee in this case consisted of Sean M. Byrne, Esq., chairman, Gina L. Bianchi, Esq., Kathleen Corrado, Ph.D., Joseph D'Amico, Hon. William T. Fitzpatrick, Richard W. Jenny, Ph.D., Hon. Peter J. McQuillan, Hon. James A. Murphy, III, Peter Neufeld, Esq., Marvin E. Schechter, Esq., Barry Scheck, Esq., Nirav R. Shah, M.D., M.P.H., Marina Stajic, Ph.D., and Ann Willey, J.D., Ph.D. It was their duty, inter alia, to evaluate and approve or reject any forensic methodology. In that regard, it sets minimum standards designed to increase and maintain the effectiveness, efficiency, reliability, and accuracy of forensic laboratories in accordance with the highest scientific standards practicable.

This approval by the New York State Commission on Forensic Science DNA Subcommittee and the full Commission on Forensic Science clearly constitutes "general acceptance." Nevertheless, the New York State Police still undertook three separate validation studies specifically designed around the Quality Assurance Standards of the FBI to ensure that Cybergenetics TrueAllele Casework was a reliable way to interpret mixed and single-source DNA evidence and provide its DNA laboratory with a standardized interpretation approach that thoroughly examined data, eliminated examiner bias, accurately preserved identification information, quantified match strength (whether positive or negative) and yielded reproduc-

ible results prior to its use thereof. These studies proved that Cybergenetics TrueAllele Casework is reliable, and that is the standard for admissibility (*see People v Wernick*, 89 NY2d 111 [1996]).

## Legal Acceptance

Cybergenetics TrueAllele Casework has also been used in the World Trade Center 9/11 victim identification,[6] the Allegheny County Crime Lab in Pittsburgh, the country of Oman, the United Kingdom Forensic Science Service and 23 states[7] (People's exhibit 29 at 4). In that regard, there have been admissibility hearings in Pennsylvania, Virginia, California, Ohio, and, now, New York, as well as in Northern Ireland, Australia, and England, with Cybergenetics TrueAllele Casework being admitted in all but the England case (there was no decision in that case).

This case is similar to the situation the Court of Appeals was presented with, and sanctioned, in *People v Wesley*. At the time of the hearing in that case only three laboratories in the world were performing restriction fragment length polymorphism (RFLP) based DNA typing. The only articles written on the subject were authored by scientists affiliated with those laboratories and many law enforcement entities, including the FBI, had not employed the technique. At the time that Court considered the issue the scientific community had not widely adopted the procedure, but it still found that RFLP based profiling had been accepted as reliable within the scientific community.

## Expert Testimony

While the superiority of continuous systems like Cybergenetics TrueAllele Casework has been acknowledged for over a decade, implementation has lagged (People's exhibit 25). The problem, according to Dr. Perlin, is one of education, not lack of general acceptance. In that regard, Dr. Perlin has given over 50 talks, testified in numerous court proceedings (domestically and internationally), and has been the keynote speaker for the American Academy of Forensic Sciences, the International

---

**6.** The Office of the Chief Medical Examiner of the City of New York asked Cybergenetics TrueAllele Casework to deconvolute mixtures from victim remains from the site relative to the 2,700 missing persons.

**7.** Kern County, California and the State of Virginia are presently using Cybergenetics TrueAllele Casework for all forensic casework.

Conference on Forensic Inference and Statistics, and the International Symposium on Human Identification (Promega). He has even been a lecturer for the American Bar Association at several continuing legal education programs.

The National Institute of Standards and Technology (NIST), the scientific wing of the United States Department of Commerce, whose mission is to advocate science in the United States and guide the forensic DNA community, uses Cybergenetics TrueAllele Casework to insure that its scientific reference material used in testing laboratories is what they describe it as (to assess a mixture weight and thereby determine the variability of different amplifications). This means that Cybergenetics TrueAllele Casework is used, albeit indirectly, by almost every laboratory in the United States since they all obtain control samples from NIST. Michael D. Coble and John M. Butler, both from the NIST Applied Genetics Group, gave a presentation entitled Exploring the Capabilities of Mixture Interpretation Using TrueAllele Software on September 3, 2011 at the 24th Congress of the International Society for Forensic Genetics. They concluded by summarizing their results and finding that Cybergenetics TrueAllele Casework makes better use of the data than the random man not excluded approach, the statistical equivalent of CPI. And this was not the only time that NIST acknowledged the effectiveness and reliability of Cybergenetics TrueAllele Casework—at the Green Mountain DNA conference on July 28-30, 2014 in Burlington, Vermont, Michael D. Coble presented the results of a study entitled Mix 13: Overview and Lessons Learned and reported that Cybergenetics TrueAllele Casework was the only expert system to correctly exclude the suspect in a controlled study involving 100 laboratories, it made poster presentations at conferences for the International Symposium on Human Identification and the International Society for Forensic Genetics, and it even put on a webinar two-part series pertaining to probabilistic gene typing and advocated the use of this method (Oct. 8, 2014 tr at 561).

## Findings

The evidence shows that computerized probabilistic approaches and likelihood ratio principles used by Cybergenetics TrueAllele Casework are superior to current methods. Moreover, Cybergenetics TrueAllele Casework has been demonstrated to be one of, if not, the most advanced method of

interpreting DNA profiles from mixed and low-template DNA. It has been proved to be more accurate than CPI and CLR, preserves more of the identification information, eliminates examiner bias, produces a match value which human review may not, and permits standardization of mixture reporting whereas human review approaches can lead to very different match statistics on the same DNA data.

Here, there is a plethora of evidence in favor of Cybergenetics TrueAllele Casework, *and there is no significant evidence to the contrary*. The court recognizes that the lack of critical work does not guarantee the absence of controversy; however, the reality is that Cybergenetics TrueAllele Casework has been around since 1999, a time frame that would certainly allow for a thorough critical review to be put forth if it was warranted.

Based upon the evidence produced at this hearing, the court finds:

1. that Cybergenetics TrueAllele Casework has been empirically tested and found to be relevant, reliable, and accurate,

2. that Cybergenetics TrueAllele Casework has been subjected to favorable peer review and extensive publication,

3. that Cybergenetics TrueAllele Casework's average efficacy has been proved to be at least $4\frac{1}{2}$ orders of magnitude more efficacious than human review on the same data,

4. that Cybergenetics TrueAllele Casework has been validated and found to be reproducible,

5. that the various scientific principles used by Cybergenetics TrueAllele Casework have been long ago accepted and endorsed by the scientific community, and

6. that the ongoing administrative investigation at the New York State Police Forensic Investigation Center has no bearing on the validation studies performed in July 2013 and/or March 2014 (*see* aff of Timothy J. Munro, sworn to Jan. 23, 2015).

## Conclusion

Accordingly, the court finds that Cybergenetics TrueAllele Casework is not novel but instead is "generally accepted" under the *Frye* standard. The court therefore denies the defendant's motion to preclude, subject to sufficient foundational showings by the People as to their experts' qualifications and adherence to accepted procedures for collection, storage, or analysis of such evidence (*cf. People v Kelly*, 288 AD2d 695 [3d Dept 2001]).

## Table A

People's Exhibits:

1. Curriculum Vitae—Dr. Mark W. Perlin

2. Computer Interpretation of Quantitative DNA Evidence

3. Mark W. Perlin and Alexander Sinelnikov, *An Information Gap in DNA Evidence Interpretation*, PLOS ONE

4. Mark W. Perlin, Matthew M. Legler, Jessica L. Smith, Jamie L. Belrose and Barry W. Duceman, *Validating TrueAllele DNA Mixture Interpretation*, Journal of Forensic Sciences

5. Mark W. Perlin, Jamie L. Belrose and Barry W. Duceman, *New York State TrueAllele Casework Validation Study*, Journal of Forensic Sciences

6. J. Ballantyne, E.K. Hanson and M.W. Perlin, *DNA mixture genotyping by probabilistic computer interpretation of binomially-sampled laser captured cell populations: combining quantitative data for greater identification information*, Science and Justice

7. M.W. Perlin, J. Hornyak, G. Sugimoto and K. Miller, *TrueAllele genotype identification on DNA mixtures containing up to five unknown contributors*, Journal of Forensic Sciences

9. Virginia TrueAllele Validation Study: Casework Comparison

10. Mark W. Perlin, Kiersten Dormer, Jennifer Hornyak, Lisa Schiermeier-Wood, Susan Greenspoon, *TrueAllele Casework on Virginia DNA Mixture Evidence: Computer and Manual Interpretation in 72 Reported Criminal Cases*, PLOS ONE

11. DNA Subcommittee approval letter

12. Commission on Forensic Science approval letter

15. Citation Index

16. Forensic Collaborations

17. Workshop announcement

18. 9th International Conference on Forensic Inference and Statistics abstracts

19. Exploring the Capabilities of Mixture Interpretation Using TrueAllele Software

20. The New Standard Reference Material 2391c: PCR-based DNA Profiling Standard

21. Margaret C. Kline, Carolyn R. Hill, Erica L.R. Butts, David L. Duewer, Michael D. Coble, John M. Butler, *Examination of DNA Mixture Proportion Variability Using Multiple STR Typing Kits and NIST Standard Reference Material 2391c Component D*

22. Certificate of Analysis

23. Michael D. Coble, Mix13: Overview and Lessons Learned

24. *Statistical Evaluation of Forensic DNA Profile Evidence*, Annual Review of Statistics and Its Application (2014)

25. Duncan Taylor, Jo-Anne Bright, John Buckleton, *The interpretation of single source and mixed DNA profiles*, Forensic Science International: Genetics

26. Hannah Kelly, Jo-Anne Bright, John S. Buckleton, James M. Curran, *A comparison of statistical models for the analysis of complex forensic DNA profiles*, Science and Justice

27. Establishing the Limits of TrueAllele Casework: A Validation Study

28. James M. Curran, *A MCMC method for resolving two person mixtures*, Science and Justice

29. TrueAllele Casework Supporting Data/Validation

30. New York State Police Crime Laboratory System TrueAllele Casework Validation Addendum—two and three person mixtures

31. New York State Police Crime Laboratory System TrueAllele Casework Validation Addendum—four person mixture and familial study

Defendant's Exhibit:

A.P. Gill, L. Gusmao, H. Haned, W.R. Mayr, N. Morling, W. Parson, L. Prieto, M. Prinz, H. Schneider, P.M. Schneider, B.S. Weir, *DNA commission of the International Society of Forensic Genetics: Recommendations on the evaluation of STR typing results that may include drop-out and/or drop-in using probabilistic methods*, Forensic Science International: Genetics.