People v Fields (2018 NY Slip Op 02503)





People v Fields


2018 NY Slip Op 02503


Decided on April 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 12, 2018

107727

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
NAHKIEM FIELDS, Also Known as NAZ, Appellant.

Calendar Date: February 15, 2018

Before: Garry, P.J., Devine, Mulvey and Aarons, JJ.


Paul J. Connolly, Delmar, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.


Devine, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Milano, J.), rendered June 2, 2015 in Schenectady County, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (two counts), assault in the second degree and criminal possession of a weapon in the third degree.
In the overnight hours of April 29-30, 2014, the victim and his friend emerged from a convenience store in the City of Schenectady, Schenectady County to find a group of five people approaching them. One of the five accosted the victim and struck him in the head with the butt of a pistol, after which the group walked away. Some of the group were apprehended soon after the incident, and an investigation into their activities on the night
in question led to defendant being identified as the assailant and charged in an indictment with various offenses. Pretrial motion practice occurred in County Court (Drago, J. and Loyola, J.), after which the indictment was transferred to Supreme Court for a pretrial conference and trial. Following that trial, a jury convicted defendant of criminal possession of a weapon in the second degree (two counts), assault in the second degree and criminal possession of a weapon in the third degree. Supreme Court sentenced defendant, as a second felony offender, to an aggregate prison term of 12 years to be followed by postrelease supervision of five years. Defendant appeals, and we now affirm.
Defendant contends that the verdict was not supported by legally sufficient evidence and [*2]was against the weight of the evidence in two respects. He first asserts that the testimony of two accomplices — who were part of the group that defendant was with and gave some detail as to his actions — was not corroborated as required by CPL 60.22 (1). The statutory corroboration requirement will be satisfied with proof that "tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (People v Sage, 23 NY3d 16, 27 [2014] [internal quotation marks and citations omitted]; see People v Furman, 152 AD3d 870, 873 [2017], lv denied 30 NY3d 1060 [2017]). The corroborating proof does not need to demonstrate defendant's guilt; instead, "when 'read with the accomplice's testimony, [the proof] makes it more likely that the defendant committed the offense, and thus tends to connect him to it'" (People v Sage, 23 NY3d at 27, quoting People v Reome, 15 NY3d 188, 194 [2010]).
In that regard, the accomplices' accounts of defendant's attack were similar to those provided by the victim and his friend. The victim and his friend could not identify defendant as the assailant, but they described an attacker who resembled defendant and recalled distinctive characteristics of individuals with him that matched those given by the testifying accomplices. One accomplice testified that she placed the pistol used by defendant in her purse after the attack, which is where the police recovered it later that night. An examination of the pistol led to the recovery of genetic material from two males. Defendant was not definitively identified as one of those males, but was revealed to be 131,000 times more likely to be one than another, randomly selected African American. This nonaccomplice evidence sufficiently corroborated the accounts of the accomplices and, even if an acquittal on the counts for which defendant was convicted was possible, we defer to the jury's determination to credit the proof of defendant's guilt and find the verdict to be supported by the weight of the evidence (see People v Garcia, 131 AD3d 732, 733-734 [2015], lv denied 27 NY3d 997 [2016]; People v Brown, 62 AD3d 1089, 1090-1091 [2009], lvs denied 13 NY3d 742 [2009]).
Defendant further argues that the dearth of proof as to the physical injury sustained by the victim left the second-degree assault conviction unsupported by legally sufficient evidence and against the weight of the evidence (see Penal Law § 120.05 [2]). "'Physical injury' means impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]), and whether it was inflicted is ordinarily a question of fact for the jury to resolve (see People v Guidice, 83 NY2d 630, 636 [1994]). The victim testified that he was struck on the left side of the face and that, while he iced the area, he had bruising and swelling for about 10 days and was unable to sleep normally due to the pain. Other witnesses testified to seeing redness and bruising on the victim's face, and the owner of the store outside of which the attack occurred stated that the victim was bleeding in its immediate aftermath. In our view, this proof was legally sufficient to determine that the victim suffered "more than slight or trivial pain" as a result of the attack, and the jury's determination to credit it was not against the weight of the evidence (People v Chiddick, 8 NY3d 445, 447 [2007]; see People v Mullings, 105 AD3d 407, 408 [2013], lv denied 21 NY3d 945 [2013]; People v Boyd, 97 AD3d 898, 898-899 [2012], lv denied 20 NY3d 1009 [2013]).[FN1]
Defendant also contends that the People failed to demonstrate their entitlement to an order authorizing the taking of a buccal swab from him. Defendant had been indicted, which established probable cause to believe that he committed a crime, and DNA evidence recovered from the pistol gave a clear indication that material evidence could be expected to result from a comparison between that evidence and his own DNA. The issuance of the order was authorized under these circumstances, and County Court (Loyola, J.) did not err in issuing it (see CPL 240.40 [2] [b] [v]; People v Vieweg, 155 AD3d 1305, 1308 [2017], lv denied 30 NY3d 1121 [2018]; People v Roshia, 133 AD3d 1029, 1030 [2015], affd 28 NY3d 989 [2016]).
As noted above, subsequent DNA analysis did not definitively tie defendant to the genetic material recovered from the pistol. The People accordingly sought to present proof of a re-analysis conducted with the TrueAllele Casework System (hereinafter TrueAllele), a computer program that subjects a DNA mixture to statistical modeling techniques to infer what DNA profiles contributed to the mixture and calculate the probability that DNA from a known individual contributed to it. Defendant argued that the TrueAllele evidence should be precluded or that the general acceptance of the technique in the scientific community should be assessed via a Frye hearing. Supreme Court denied the application due to the fact that an extensive Frye hearing had been conducted on the issue in another criminal case in the same county and that a determination, issued weeks before the trial in this matter, was rendered finding that the procedure was not novel and was generally accepted by the relevant scientific community (People v Wakefield, 47 Misc 3d 850 [Sup Ct, Schenectady County 2015]). We acknowledge that the defendant in People v Wakefield (supra) was convicted of various offenses and that he may well attack the propriety of the Frye determination upon his as-yet-unperfected appeal. Nevertheless, Supreme Court's reliance upon the determination was not an abuse of discretion (see People v LeGrand, 8 NY3d 449, 457-458 [2007]; People v Gonzalez, 155 AD3d 507, 508 [2017], lv denied 30 NY3d 1115 [2018]), although defendant may wish to revisit the issue should subsequent developments warrant it (see e.g. People v Jones, 128 AD2d 405, 407 [1987], affd 70 NY2d 547 [1987]).
The results of the TrueAllele analysis were placed into evidence at trial via the testimony of Mark Perlin, the chief executive officer and chief scientific officer of the corporation that developed TrueAllele, as well as the author of the report quantifying the probability of defendant being a contributor to the DNA mixture recovered from the pistol. He is one of two individuals with access to the proprietary source code of TrueAllele, which is the program's "computer code in [the] original programming language" as written by the software developers (Webster's Third New International Dictionary, Unabridged [Merriam-Webster 2016], source code [http:// unabridged.merriam-webster.com/unabridged/source code]). Perlin revealed during cross-examination that the source code had not been disclosed to the State Police or other TrueAllele users. Defense counsel then asked Perlin if he could "give the [c]ourt and the jury the source code," which prompted a successful objection from the People. Defense counsel did not pursue the issue further in cross-examination or demand that Supreme Court compel Perlin to produce the source code, instead moving to strike Perlin's testimony upon the basis that he was deprived of his right to confront and cross-examine Perlin about the source code.
Defendant has a right under the Federal and State Constitutions to confront the witnesses against him (see US Const amend VI; NY Const, art I, § 6) and, as framed at trial, he argued that the absence of the source code placed impermissible restrictions on his cross-examination of Perlin (see Delaware v Fensterer, 474 US 15, 18 [1985]; People v Montes, 16 NY3d 250, 253 [2011])[FN2]. He overlooks that "the constitutional right to confront witnesses through cross-examination . . . is not absolute" (People v Gooley, 156 AD3d 1231, 1232 [2017] [internal citations omitted]; see People v Corby, 6 NY3d 231, 234 [2005]), with "trial judges retain[ing] wide latitude . . . to impose reasonable limits . . . based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant" (Delaware v Van Arsdall, 475 US 673, 679 [1986]; see Delaware v Fensterer, 474 US at 20).
Defendant's motion for a Frye hearing demonstrated his awareness that the source code was not public and that an expert analysis of it could potentially call the accuracy of the TrueAllele report into question. Defendant could have demanded disclosure of the source code to permit an expert review to probe these "possible infirmities in the collection and analysis of data" used against him (People v Wesley, 83 NY2d 417, 429 [1994]; see CPL 240.20 [1] [c])[FN3]. He did not do so, nor did he include the source code in his pretrial request that the People instruct Perlin to bring certain documents with him for purposes of cross-examination. He instead raised the issue during his cross-examination of Perlin, during which he established that the source code was secret and that the instructions embodied in it were unknown. Supreme Court drew the line at a question regarding Perlin's willingness to produce the source code itself, a belated and prejudicial request for raw computer code that, absent an expert interpretation that defendant did not indicate was forthcoming, would have been meaningless to the jury. Thus, "weigh[ing] the probative value of such evidence against the possibility that it would confuse the main issue and mislead the jury . . . or create substantial danger of undue prejudice to one of the parties," we cannot say that Supreme Court abused its wide discretion in prohibiting defendant from asking Perlin to produce the source code (People v Corby, 6 NY3d at 234-235 [internal quotation marks and citation omitted]; see People v Lippe, 145 AD3d 1035, 1038 [2016], lv denied 30 NY3d 1020 [2017]; People v Demagall, 114 AD3d 189, 201 [2014], lv denied 23 NY3d 1035 [2014]).
Next, Supreme Court issued a protective order preventing defendant from having copies of statements made by the accomplice witnesses with him in jail. The People represented that defendant had harassed and implicitly threatened one of the accomplices while both were jailed [*3]and, in the absence of any articulated prejudice flowing from the order, we perceive no abuse of discretion in Supreme Court's decision to issue it (see CPL 240.50 [1]; People v Mileto, 290 AD2d 877, 878-879 [2002], lv denied 97 NY2d 758 [2002]; People v Robinson, 200 AD2d 693, 694 [1994], lv denied 84 NY2d 831 [1994]). Supreme Court further placed restrictions upon disclosure of the victim's and his friend's contact information, limiting the former to defense counsel and blocking the latter altogether. The People disclosed to defendant that neither the victim nor his friend identified him as the assailant after the attack, although the victim pointed to defendant's photograph as one of two in an array that resembled the assailant. Assuming without deciding that aspects of this ruling constituted a Brady violation, both men testified at trial, and defendant, who had "a meaningful opportunity to use the allegedly exculpatory material to cross-examine" them, was not deprived of a fair trial (People v Cortijo, 70 NY2d 868, 870 [1987]; see People v Carter, 131 AD3d 717, 720 [2015], lv denied 26 NY3d 1007 [2015]).
The remaining arguments advanced by defendant may be dispatched without difficulty. Defendant was jailed on unrelated charges during the pendency of these proceedings, and testimony regarding the retrieval of his cell phone from a storage area in the jail and its transfer to the State Police for forensic analysis authenticated and established a chain of custody for the phone sufficient to warrant the admission of the phone and its contents into evidence (see People v Hawkins, 11 NY3d 484, 494 [2008]; People v Arce-Santiago, 154 AD3d 1172, 1173-1174 [2017], lv denied 30 NY3d 1113 [2018]). Lastly, defendant "has failed to demonstrate any extraordinary circumstances or an abuse of discretion warranting a reduction of the sentence in the interest of justice" (People v Williams, 156 AD3d 1224, 1231 [2017]).
Garry, P.J., Mulvey and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Legally sufficient proof supports the verdict in all respects and, as a result, defendant is precluded from assailing the denials of his applications to dismiss the indictment due to "the sufficiency of the evidence presented or the instructions given to the grand jury" (People v Gaston, 147 AD3d 1219, 1223 n 2 [2017]; see CPL 210.30 [6]; People v Robinson, 156 AD3d 1123, 1128 n 8 [2017], lv denied 30 AD3d 1119 [2018]). Our review of the grand jury minutes does not reveal the existence of any "fundamental defect[s]" that impaired the integrity of the grand jury or prejudiced defendant so as to warrant reversal (People v Wisdom, 23 NY3d 970, 972 [2014]; see People v Robinson, 156 AD3d at 1128 n 8; see also People v Johnson, 100 AD2d 134, 143-144 [1984], affd 63 NY2d 419 [1984]).

Footnote 2: Defendant now asserts that he made an "application [to Supreme Court] for disclosure of the source code." He did nothing of the sort and, since the People objected to his efforts to obtain the source code from Perlin, it was incumbent upon him to do so. To the extent that his argument on appeal is based upon this premise, it is unpreserved for our review (see People v Medina, 53 NY2d 951, 952 [1981]).

Footnote 3: In the absence of any suggestion that defendant made a demand for production of the source code pursuant to CPL 240.20, we will not address the intriguing possibilities had he done so (see People v Robinson, 53 AD3d 63, 73-74 [2008], lv denied 11 NY3d 857 [2008]; People v Jones, 55 Misc 3d 743, 752-753 [Sup Ct, Bronx County 2017]; People v Gills, 52 Misc 3d 903, 907-908 [Sup Ct, Queens County 2016]).